GERTRUDE A. CARLSON, APPELLANT, v. AUSTIN W. CARLSON, RESPONDENT.

No. 22510

May 14, 1992 832 P.2d 380

*Marshal S. Willick,* Las Vegas, for Appellant.

*Robert W. Lueck,* Las Vegas, for Respondent.

---

[2]We express no opinion on the merits of petitioner's petition to seal his records.

## OPINION

*Per Curiam:*

The parties entered into a property settlement which was incorporated into their divorce decree. Thereafter, appellant Gertrude Carlson ("Trudy") moved for relief from the judgment pursuant to NRCP 60(b). The domestic relations referee recommended that said relief be granted. Respondent Austin Carlson ("Austin") objected to the referee's report, and the district court vacated the referee's findings and recommendations. For the reasons discussed herein, we reverse.

### FACTS

After twenty-five years of marriage, Trudy and Austin were divorced in August of 1990. Austin was employed by Kaiser Steel Corporation for approximately twenty of those years. Trudy had a high school education and was not employed outside the home during the first twenty years of their marriage. She raised the children and maintained the family home.

When Austin retired from Kaiser Steel Corporation, he elected the "Life and Surviving Spouse" pension option. Under this option, if Trudy survived Austin, she would receive the monthly annuity for thirty-six months and half the monthly annuity for the rest of her life. The option was irrevocable.

After physically separating, Austin and Trudy met with attorney Robert Lueck to discuss a joint petition for divorce. Mr. Lueck advised Trudy that she could seek independent counsel at any time. They again met to sign the divorce papers, but Trudy refused to sign the papers because they provided that she waived her rights to Austin's pension.

In May of 1990, Trudy retained counsel. Through their attor-

neys, the parties began negotiating a property settlement. Trudy's counsel attempted to obtain information about the value of Austin's pension from New York Life Insurance Company (New York Life) which administered Austin's pension plan. New York Life responded slowly to the request for information.[1] In fact, New York Life did not reveal the actual value of Austin's pension until after the divorce decree had been entered. Because Trudy's counsel did not have the information from New York Life indicating the actual value of Austin's pension, she relied on Austin's and his counsel's representation that the proposed division of property was an essentially equal distribution of assets. Trudy agreed to the settlement. On August 17, 1990, the district court adopted said agreement and incorporated it into the divorce decree.

Thereafter, Trudy learned the actual value of Austin's pension and realized that she had received approximately twenty-nine percent of the parties' assets. She therefore moved for relief from the judgment pursuant to NRCP 60(b). The domestic relations referee recommended that the district court grant Trudy's requested relief. Austin objected to the referee's report. The district court sustained Austin's objection and vacated the referee's findings and recommendations.

## DISCUSSION

A domestic relations referee must hear all post-trial motions related to divorce in the Eighth Judicial District Court, EDCR 5.81(1)(a).[2] Trudy argues that the district court erred in vacating the referee's report because there was substantial evidence to support said report. In other words, Trudy is arguing that the district court must review the referee's report as though it was an administrative decision. *See* SIIS v. Swinney, 103 Nev. 17, 20, 731 P.2d 359, 361 (1987) (the decision of an administrative agency will be affirmed if there is substantial evidence to support the decision). Trudy relies on Minnear v. Minnear, 107 Nev. 495, 814 P.2d 85 (1991). In *Minnear,* this court held that the

---

[1]New York Life informed Trudy's counsel that it would not release any information until it received Austin's written authorization for such a release. Austin signed the release on June 28, 1990, and Trudy's counsel again requested information from New York Life.

[2]EDCR 5.81(1)(a) provides:

(a) Unless otherwise directed by the court, a domestic relations referee must hear the following matters:

(1) All pretrial and post-trial motions related to domestic relations matters including, but not limited to, divorce, separate maintenance and annulment.

district court did not abuse its discretion in adopting the referee's report. *Id.* at 497, 814 P.2d at 86. There is no language in *Minnear* to suggest that the district court is bound by the referee's report if it is supported by substantial evidence.

Trudy also relies on cases interpreting NRCP 53.[3] The present case, however, does not involve the appointment of a master pursuant to NRCP 53.[4] This case involves a normal "abuse of discretion" standard of review. Motions under NRCP 60(b) are within the sound discretion of the district court, and this court will not disturb the district court's decision absent an abuse of discretion. Heard v. Fisher's & Cobb Sales & Distrib., Inc., 88 Nev. 566, 568, 502 P.2d 104, 105 (1972).

Trudy argues that Austin improperly received the bulk of the community property because he misrepresented the value of his pension. Trudy contends that she demonstrated that the divorce decree should be set aside based on either mutual mistake or fraud. We agree. During the parties' negotiations, both Austin and his attorney informed Trudy's counsel that the proposed, and later agreed-to, division of assets was "essentially equal." Trudy received approximately twenty-nine percent of the parties' assets. Obviously, Trudy did not receive an essentially equal division of the community assets.

Austin never expressly addresses whether he or his counsel made the misrepresentations. Instead, Austin argues that because Trudy was represented by counsel and because Trudy did not opt to continue discovery, her arguments are without merit. Arguably, Trudy's counsel should have more diligently pursued information about the pension or, at least, moved for a continuance until she determined the actual value of the pension.[5] Nonetheless, "[t]he salutary purpose of Rule 60(b) is to redress any injustices that may have resulted because of excusable neglect or

---

[3]Pursuant to NRCP 53, the district court may appoint a master in any pending action. NRCP 53(a). "A reference to a master shall be the exception and not the rule. . . . [I]n actions to be tried without a jury, save in matters of account and of difficult computation of damages, a reference shall be made only upon a showing that some exceptional condition requires it." NRCP 53(b). In non-jury trials, the district court "shall accept the master's findings of fact unless clearly erroneous." NRCP 53(e)(2).

[4]Our conclusion is further supported by the fact that EDCR 1.40 provides that Uniform Reciprocal Support Act masters "must be in accordance with the provisions of N.R.C.P. 53," 1.40(b); however, EDCR 5.81 does not provide that the domestic relations referees must be in accordance with NRCP 53.

[5]Appellant's present counsel did not represent appellant at the time of the divorce.

the wrongs of an opposing party. Rule 60 should therefore be liberally construed to effectuate that purpose." Nevada Indus. Devel., Inc. v. Benedetti, 103 Nev. 360, 364, 741 P.2d 802, 805 (1987) (citations omitted).

Moreover, the record clearly demonstrates that the representations were the result of either mistake or fraud. If both Austin and Trudy were mistaken about the pension's value, the parties entered the property settlement based upon a mutual mistake, namely, that they had essentially split their property equally. A mutual mistake entitles a party to relief from a judgment. NRCP 60(b)(1). If, however, Austin or his counsel knew the value of the pension, they fraudulently misrepresented the value of Austin's pension. Such fraud is grounds for relief from the judgment pursuant to NRCP 60(b)(2).[6] Therefore, we conclude that Trudy was entitled to relief from the judgment.

Trudy also argues that the divorce decree should be amended so that it constitutes a qualified domestic relations order formally designating her as Austin's "surviving spouse," as required under federal law, in order for her to receive the pension's survival benefits.

Under the Employee Retirement Income Security Act, a pension plan cannot assign or alienate benefits. Gavin L. Phillips, Annotation, *Domestic Relations Order,* 79 A.L.R.4th 1081 (1990). This anti-assignment rule applies to "the creation, assignment, or recognition of a right to any benefit payable with respect to a participant pursuant to a domestic relations order, *except that paragraph (1) shall not apply if the order is determined to be a qualified domestic relations order.*" 29 USC § 1056(d)(3)(A) (emphasis added).

Upon his retirement, Austin elected the "surviving spouse" annuity. This option was irrevocable. Therefore, designating Trudy as Austin's "surviving spouse" will not affect Austin's annuity. On the other hand, Trudy will lose the benefits if she is not so designated. Consequently, we conclude that the divorce decree should be amended so that it constitutes a qualified domestic relations order.[7]

---

[6]Austin cites several cases which distinguish between extrinsic and intrinsic fraud. *See* Mazour v. Mazour, 64 Nev. 245, 180 P.2d 103 (1947); Colby v. Colby, 78 Nev. 150, 369 P.2d 1010 (1962); and Norris v. Phillips, 86 Nev. 619, 472 P.2d 347 (1970). In 1981, NRCP 60(b)(2) was amended whereby a party could obtain relief on the basis of fraud whether denominated intrinsic or extrinsic. In the Matter of the Amendment of NRCP 60(b)(2), ADKT 43 (Order Amending Rule, October 22, 1981). Accordingly, the cases cited by Austin are not applicable.

[7]In order to qualify as a domestic relations order, the divorce decree must recognize the right of the alternative payee to receive benefits, 29 USC § 1056(d)(3)(B)(i)(I). The order must also specify the following: (1) the name

Accordingly, we hereby reverse the district court's order vacating the domestic relations referee's recommendations and remand for further proceedings consistent with this opinion.

---

and address of the pension participant and the alternative payee; (2) the amount of the participant's benefits to be paid by the plan to the alternative payee or the manner in which such amount is to be determined; (3) the number of payments or period to which the order applies; and (4) the plan under which such order applies. 29 USC § 1056(d)(3)(C).