ANSEL CASENTINI, AN INDIVIDUAL, PETITIONER, *v.* THE NINTH JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA, IN AND FOR THE COUNTY OF DOUGLAS, AND THE HONORABLE DAVID R. GAMBLE, DISTRICT JUDGE, RESPONDENTS, AND CHO HUNTON, REAL PARTY IN INTEREST.

No. 25122

July 7, 1994                                           877 P.2d 535

---

*Allison, MacKenzie, Hartman, Soumbeniotis & Russell, Ltd.,* and *Michael Pavlakis,* Carson City, for Petitioner.

*Roeser & Roeser,* Zephyr Cove, for Real Party in Interest.

## OPINION

*Per Curiam:*

This petition involves the efforts of judgment creditor Cho Hunton, real party in interest, to satisfy her judgment against William Casentini. Hunton filed a complaint alleging that William has been transferring his personal assets and earnings to R&A Inc., a Nevada corporation (R&A), and his shares of R&A stock to petitioner Ansel Casentini, his father, in an effort to fraudulently avoid payment of the judgment. The complaint names William, R&A, and Ansel as defendants. Ansel insists that the Nevada district court has acted without jurisdiction, and petitions this court for a writ of prohibition directing the district court to refrain from exercising jurisdiction over him. We conclude that the petition should be denied, as a prima facie showing of jurisdiction has been demonstrated.

### FACTS

Ansel, a resident of California, is a shareholder in R&A and was named as a defendant in Hunton's lawsuit seeking a recovery of property allegedly transferred to Ansel and R&A by the judgment debtor, Ansel's son, William.

Hunton's amended complaint alleges that she is the holder of a final judgment of over $35,000 against William. The complaint avers that Hunton seized $760.00 from William's restaurant in Genoa, but that she has been unable to further satisfy her judgment due to various legal maneuverings by William, including a bankruptcy filing which was later dismissed.

The complaint further alleges that William has transferred, without consideration, personal earnings and property from the restaurant to defendant R&A and has delivered shares of R&A stock to his father Ansel, all in a fraudulent attempt to prevent Hunton from successfully executing on her judgment. Accordingly, the complaint seeks to set aside the transfers and to enjoin any further transfers; it also seeks damages resulting from the actions of William and Ansel.

After process was served on Ansel's wife at their residence in San Francisco, Ansel specially appeared in the district court and moved to quash service on grounds that the district court lacked personal jurisdiction over him. The district court denied Ansel's motion.

Ansel contends that the district court did not have jurisdiction over him because at all relevant times, he has been a resident of California who performed no act within the State of Nevada

relating to the property or stock which Hunton seeks to reach as a means of satisfying her judgment. Ansel also avers that because of his poor health and advanced age, he has not been able to travel to Nevada or do business here for many years prior to the time relevant to the matters alleged in the complaint.

Hunton supports the district court's jurisdiction over Ansel by referring to copies of certain tax returns attached to her opposition to Ansel's motion to quash. The returns reveal that in 1987, prior to the date of Hunton's judgment, William owned 25% of the stock in R&A and Ansel owned the remaining shares. Moreover, the address for both Ansel and William was listed on the returns as a post office box in Minden, Nevada. Hunton also notes that the tax return for 1988, the year Hunton received her judgment, listed Ansel as the sole stockholder in R&A, thereby creating the inference that William's stock had been transferred to his father. Furthermore, Ansel again lists his address on the 1988 tax return as a post office box in Minden, Nevada.

Also, according to an affidavit signed by Hunton's husband, Ansel attended at least one day of the Minden trial which resulted in Hunton's judgment against William. Hunton notes that the affidavit accompanying Ansel's motion to quash was signed by his attorney and that it did not aver that Ansel was not present during the trial. Hunton asserts that this affidavit violated Ninth District Court Rule 6(c).[1]

## DISCUSSION

It is well established that "[a] writ of prohibition is the appropriate remedy for a district court's erroneous refusal to quash service of process." Budget Rent-A-Car v. District Court, 108 Nev. 483, 484, 835 P.2d 17, 18 (1992). This court must therefore make a determination as to whether the petitioner's contentions have merit.

Because many of the facts necessary to determine the issue of

---

[1]Ninth District Court Rule 6 provides:

Rule 6.  Affidavits on motions

(a) Factual contentions involved in any pretrial or post trial motion must be initially presented and heard upon affidavits, depositions, answers to interrogatories, and admissions.

(b) Each affidavit shall identify the affiant, the party on whose behalf it is submitted, and the motion or application to which it pertains, and must be served and filed with the motion, opposition, or reply to which it relates.

(c) Affidavits must contain only factual, evidentiary matter, conform with the requirements of N.R.C.P. 56(e), and avoid mere general conclusions or arguments. Affidavits substantially defective in these respects may be stricken, wholly or in part.

personal jurisdiction can only be adduced at trial, the party opposing a motion to quash is not required to immediately show by a preponderance of the evidence that jurisdictional requisites are met. Initially, the opposing party need only make a prima facie showing of jurisdiction. In Trump v. District Court, 109 Nev. 687, 857 P.2d 740 (1993), we stated:

> Once a defendant challenges personal jurisdiction, the plaintiff may proceed to show jurisdiction by one of two distinct processes. In the more frequently utilized process, a plaintiff may make a prima facie showing of personal jurisdiction prior to trial and then prove jurisdiction by a preponderance of the evidence at trial. "When a challenge to personal jurisdiction is made, the plaintiff has the burden of introducing competent evidence of essential facts which establish a prima facie showing that personal jurisdiction exists." [Citations omitted.]
>
> . . . "In determining whether a prima facie showing has been made, the district court is not acting as a fact finder. It accepts properly supported proffers of evidence by a plaintiff as true." [Citation omitted.] However, the plaintiff must introduce some evidence and may not simply rely on the allegations of the complaint to establish personal jurisdiction.

Id. at 692-93, 857 P.2d at 743-44.

Based upon the foregoing authority, the question of dispositive significance is whether the evidence proffered by Hunton, such as the tax returns showing Ansel to be a primary, and later the sole owner, of stock in a Nevada corporation, establishes a prima facie showing of personal jurisdiction.

Ansel has made certain factual assertions tending to negate some of the force of Hunton's proffered evidence (e.g., that Ansel has always been the sole owner of the stock and that William was mistakenly listed as an owner of the stock, that the address listed on the stock is that of the corporation and not of Ansel, etc.). However, this court does not resolve factual conflict and Ansel's attempt to disengage Hunton's factual connections supporting personal jurisdiction by resort to contrary or explanatory assertions are therefore not relevant in this original writ proceeding.

After the plaintiff has made a prima facie case of jurisdiction prior to trial, the plaintiff must then still prove personal jurisdiction at trial by a preponderance of the evidence. Id. at 693, 857 P.2d at 744. It is at trial, where "the plaintiff does not have the luxury of having all disputed jurisdictional facts resolved in his or her favor" (as she does when attempting to make a prima facie

showing), *id.*, that the credibility and veracity of such factual assertions can be properly assessed.

Thus, for purposes of our review, this court must accept Hunton's evidence as true and determine whether the evidence establishes a prima facie showing of personal jurisdiction. In establishing such a showing, it must first be determined whether the district court's exercise of jurisdiction is based upon general or specific jurisdiction.

"General jurisdiction [exists] where a defendant is held to answer in a forum for causes of action unrelated to the defendant's forum activities." *Trump* at 699, 857 P.2d at 748 (citations omitted). "General jurisdiction over the defendant 'is appropriate where the defendant's forum activities are so "substantial" or "continuous and systematic" that [the defendant] may be deemed present in the forum.'" *Id.* (citations omitted).

It does not appear that any of Hunton's evidence demonstrates that Ansel's activities in Nevada have been continuous or systematic. However, Hunton's evidence all tends to show, to one degree or another, that Ansel was involved in the activities forming the basis of Hunton's suit, i.e., the alleged scheme to deprive Hunton of the means of satisfying her judgment by engaging in fraudulent transfers with his son. Accordingly, it appears that specific jurisdiction, which exists where a cause of action arises from a defendant's contacts with the forum, is the genre of jurisdiction implicated in this proceeding.

Nevada has construed its long arm statute "to be broad enough to reach the outer limits of federal constitutional due process." *Levinson v. District Court*, 103 Nev. 404, 406, 742 P.2d 1024, 1025 (1987).[2] Under this standard, the existence of specific jurisdiction in Nevada courts over out-of-state defendants depends upon the satisfaction of a three-pronged test:

1. It must first be established that the defendant "purposefully established 'minimum contacts' in the forum State[]" by "conduct and connection with the forum State . . . such that he should reasonably anticipate being haled into court there."

---

[2]The long arm statute, NRS 14.065, was amended in 1993 to simply provide as follows:

> 14.065 Exercise of jurisdiction on any basis consistent with state and federal constitutions. A court of this state may exercise jurisdiction over a party to a civil action on any basis not inconsistent with the constitution of this state or the Constitution of the United States.

Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985) (citing International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945), and World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 295 (1980)). In determining whether an out-of-state defendant can "reasonably anticipate" being haled into a foreign forum, due process requires "'some act by which the defendant purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Id.* at 475 (quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958)).

2. It must next be shown that the cause of action arose out of or is connected to the acts purposefully engaged in by the defendant in the forum state. *See, e.g.,* Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 415-16 (1984) (general jurisdiction based on continuous and systematic contacts must be found where claims do not arise out of and are not related to the defendant's activities within the forum state); Munley v. District Court, 104 Nev. 492, 496, 761 P.2d 414, 416 (1988) (where non-resident's contacts are not significant or substantial, state lacks jurisdiction over a cause of action not directly related to contacts).

3. Finally, even if the first two requirements are met, it must still be determined "whether the assertion of personal jurisdiction would comport with [traditional notions of] 'fair play and substantial justice.'" *Burger King,* 471 U.S. at 476 (quoting *International Shoe,* 326 U.S. at 320). In *Trump* we stated:

> Factors relevant to this [reasonableness] inquiry are: (1) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; and (4) the interest of the several states in furthering substantive social policies. *World-Wide Volkswagen Corp.,* 444 U.S. at 292[.][3]

*Trump,* 109 Nev. at 701, 857 P.2d at 749.

Application of the foregoing analysis to the instant case persuades us that Ansel's petition must be denied. Hunton's evidence establishes a prima facie showing that Ansel purposefully availed himself of Nevada's laws by: being the primary, and later the sole shareholder, of a Nevada corporation; declaring a Nevada address on the corporate income tax form as his address;

---

[3]*World-Wide Volkswagen,* 444 U.S. at 292, suggests that these factors are to be weighed against the burden on the defendant, which is "always a primary concern."

and engaging in stock transfers involving the Nevada corporation with his son William, a Nevada resident, which transfers form the basis of the present suit against him. We therefore conclude that there is at least prima facie evidence that the first two elements of the jurisdictional test have been met. Ansel could reasonably anticipate being haled into a Nevada court for actions involving an allegedly fraudulent transfer of a Nevada corporation's stock between himself and his son William, a Nevada resident.

There is also prima facie evidence of the satisfaction of the third prong of the jurisdictional test. As noted above, there are four factors to be weighed against a defendant's interests in determining whether an exercise of jurisdiction is reasonable and consonant with traditional notions of fair play and substantial justice.

The first factor is the interstate judicial system's interest in obtaining the most efficient resolution of controversies. Since the plaintiff in the present case and two of the three defendants (William and the corporation) are Nevada entities or residents, the more efficient forum for resolving the action is Nevada. The second factor is the forum state's interest in adjudicating the dispute. Here the dispute arises out of a Nevada resident's efforts to satisfy a judgment obtained in Nevada courts against another Nevada resident. The plaintiff, Hunton, contends that her attempts to satisfy her judgment are being frustrated by fraudulent transfers of stock in a Nevada corporation. It thus appears that Nevada has the greater interest in adjudicating this dispute. The third factor is the plaintiff's interest in obtaining convenient and effective relief. The plaintiff is a Nevada resident seeking to enforce a Nevada judgment against a Nevada resident; these factors also cut in favor of the Nevada court's exercise of jurisdiction. The final factor is the interest of the several states in furthering substantive social policies. Nevada has adopted the Uniform Fraudulent Transfers Act (NRS Chapter 112) to further the substantive social policy of assuring that the efforts of judgment creditors and others to satisfy their claims will not be defeated by fraudulent transfers like those asserted here. Nevada has an interest in preventing circumventions of the Act through jurisdictional maneuvering. It appears, therefore, that Hunton has established a prima facie showing of personal jurisdiction.

Ansel, however, relies on MGM Grand, Inc. v. District Court, 107 Nev. 65, 807 P.2d 201 (1991), for the proposition that sole or majority ownership of stock in a Nevada corporation is insufficient to support Nevada jurisdiction over a non-resident. In that

case, this court declined to extend the jurisdiction of the Nevada courts over the Walt Disney Company. The court noted, in that portion of the opinion relevant to Ansel's argument, that Disney's subsidiaries' contacts with Nevada could not be counted for jurisdictional purposes because "Disney exercises no more control over its subsidiaries than is appropriate for the sole shareholder of a corporation." *Id.* at 68-69, 807 P.2d at 203.

The instant case, however, is readily distinguished from *MGM Grand, Inc.* Here we do not have a foreign corporation which is the sole owner of the stock of a subsidiary corporation doing business in Nevada. Ansel is the disputed sole owner of the stock of a Nevada corporation. More importantly, Hunton's evidence does not merely show that Ansel is or has been the majority or sole shareholder in a Nevada corporation, but also indicates that Ansel has allegedly accommodated a fraudulent transfer of shares in the Nevada corporation from his son, a Nevada judgment debtor, in violation of a Nevada statute, NRS Chapter 112.

William has averred that the tax returns listing him as a shareholder were prepared under a mistaken belief and that he never owned any of the corporate stock. This, however, creates a question of fact and is irrelevant to the issue of whether Hunton's evidence, standing alone and accepted as true, establishes a prima facie showing of minimum contacts sufficient to support this state's jurisdiction over Ansel.

We conclude that Hunton's evidence establishes a prima facie showing that Ansel's contacts with Nevada are sufficient for Nevada to exercise personal jurisdiction over him. However, Hunton must still establish jurisdiction by a preponderance of the evidence at trial, where Ansel will have the opportunity to have the veracity and credibility of his opposing claims determined by a trier of fact. *Trump* at 693, 857 P.2d at 744.[4]

---

[4]We note that there are serious factual questions yet to be resolved involving Hunton's evidence and certain of Ansel's allegations. For example, the tax returns relied upon by Hunton are unsigned, but they do reveal the name of the person preparing the returns. Although the absence of signatures creates a basis for doubting authenticity, the lack of discovery characteristic of proceedings cut short by a jurisdictional challenge will often make it difficult to produce the highest quality evidence in support of one's claims (hence, the need for only a prima facie showing of jurisdiction, with all of the plaintiff's evidence accepted as true).

Ansel, for his part, makes an equally questionable assertion that he has been unable to obtain the minute book of his corporation, R&A, from the attorney who prepared it. If produced, the book may cast more light on the questions of stock ownership and corporate activities implicated in adjudicating both the jurisdictional and substantive issues involved in this case. All of these factors weigh in favor of allowing the proceedings below to continue, thus providing a basis for the truthful resolution of these questions through discovery.

## CONCLUSION

For the reasons discussed above, the petition is denied.