[No. C046460. Third Dist. May 24, 2005.]

FIVIA FILIP, as Special Administrator, etc., Plaintiff and Respondent, v. MARIOARA BUCURENCIU et al., Defendants and Appellants.

**[CERTIFIED FOR PARTIAL PUBLICATION**\*]**

---

\*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts I and II of the Discussion.

826

**COUNSEL**

E. John Vodonick for Defendants and Appellants.

Philip Cozens for Plaintiff and Respondent.

**OPINION**

**HULL, J.**—The Uniform Fraudulent Transfer Act (UFTA), codified in Civil Code section 3439 et seq., "permits defrauded creditors to reach property in the hands of a transferee." (*Mejia v. Reed* (2003) 31 Cal.4th 657, 663 [3 Cal.Rptr.3d 390, 74 P.3d 166]; unspecified statutory references that follow are to the Civil Code.) In this case, the court concluded that Marioara (also known as Mary) Bucurenciu and her daughter Roxanne conspired with Mary's former husband Petru (also known as Peter) Bucurenciu to transfer property to prevent plaintiff from collecting on a judgment owed by Peter. Part of this scheme involved transferring property to Loomis Land, Inc. (LLI), a business in which Mary and Roxanne were the sole shareholders. In their appeal from a judgment in favor of plaintiff, defendants Mary and LLI challenge the basis for liability under the UFTA and raise related issues. In the published portion of this opinion, we conclude that the UFTA applies to property transactions associated with a marital dissolution and property settlement agreement. We affirm the judgment.

UFTA PROVISIONS

A very brief overview of the UFTA is in order before we set forth the facts of this case.

■ A fraudulent conveyance under the UFTA involves " 'a transfer by the debtor of property to a third person undertaken with the intent to prevent a creditor from reaching that interest to satisfy its claim.' " (*Kirkeby v. Superior Court* (2004) 33 Cal.4th 642, 648 [15 Cal.Rptr.3d 805, 93 P.3d 395].) "A transfer made . . . by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made, if the debtor made the transfer as follows: [¶] (1) With actual intent to hinder, delay, or defraud any creditor of the debtor." (§ 3439.04, subd. (a).)

■ Section 3439.07, subdivision (a) sets forth creditors' remedies, which include avoidance of a transfer, attachment, and the equitable remedies of injunction and receivership as well as "[a]ny other relief the circumstances may require." (§ 3439.07, subd. (a)(3)(C).) ■ A transfer is not voidable against a person "who took in good faith and for a reasonably equivalent value or against any subsequent transferee." (§ 3439.08, subd. (a).)

### Facts and Proceedings

The transactions forming the basis for this appeal are numerous and convoluted, and we do our best to set them out in a coherent manner.

In 1997, Marin Filip filed a complaint for fraud against Peter. A court trial ensued and, in February 1999, judgment was entered against Peter for $249,000 in damages plus interest, for a total of $366,388.77. This court affirmed the judgment in a nonpublished opinion. (*Filip v. Bucurenciu* (Feb. 21, 2001, C032347).)

In trying to collect on that judgment, Filip learned that Peter had transferred property in which he had an interest to a trust and to LLI. In September 2001, Filip filed a complaint that included causes of action for conspiracy and relief under the UFTA, naming as defendants Peter, Mary, Roxanne, the Bucurenciu Family Trust, and LLI. Filip also asserted a cause of action for constructive trust over property subsequently acquired by defendants Titus and Silvia Bujdei.

During the course of this litigation, Filip died and plaintiff was named in his stead. For ease of discussion, we use the term "plaintiff" to refer to both Marin Filip and his estate.

At trial, plaintiff introduced evidence relating to transfers of a number of properties in which Peter had originally had an interest. Briefly, this evidence demonstrated the following:

In 1997, soon after plaintiff filed his complaint against Peter, Mary and Peter created the Petru Bucurenciu Family Trust to hold four parcels of real estate. In keeping with the parties' nomenclature, we refer to these properties by their street addresses: 3380 Chisom Trail, 3400 Chisom Trail, 2011 North Cirby Way, and 2013 North Cirby Way. Mary ran a residential care facility at the 3380 Chisom Trail property.

On November 13, 1998, after the trial court had announced its tentative decision to award plaintiff $249,000 in damages, plaintiff submitted a proposed judgment for signature.

Events were transpiring at the same time in Peter and Mary's personal lives. On December 2, 1998, they entered into a "Settlement of Agreed Separation of Property for Divorce." This document stated that Peter and Mary "have separated and are living separately and apart since May 1998." The agreement added that "[t]he parties have no community property and no community debt" and it set forth a division of property. Mary was to receive the Chisom Trail properties and Peter received the properties on North Cirby Way. The agreement also stated that Peter "who resides in Oregon received the $200,000 provided from refinancing" of the 3380 Chisom Trail property. It continued: "At a later date, [Peter] will receive an additional $200,000 from [Mary]. This payment will be the last dollar exchange between [Peter and Mary] concerning assets accumulated in the past during marriage."

According to the settlement agreement and Mary's testimony at trial, Mary intended to build and operate a residential care home at the 3400 Chisom Trail property.

Only weeks later, on December 9, 1998, Mary formed LLI, a company in which she and Roxanne were the sole stockholders. On December 15, the Petru Bucurenciu Family Trust transferred the 3400 Chisom Trail property to LLI.

Despite the representation in Peter and Mary's settlement agreement that Mary owned the property at 3400 Chisom Trail and that there were no community debts, the construction loan application for the care facility at this site was in both Peter and Mary's names. Financing statements were signed by both Peter and Mary, even after the date of the settlement agreement, and some of these statements showed the Chisom Trail address as Peter's mailing address.

Although the property at 2013 North Cirby Way was allocated to Peter in the property agreement, this property was also transferred to LLI on December 15, 1998. At trial, Mary insisted this transfer was an innocent mistake, but the evidence also established that she continued to pay the tax bills for the North Cirby Way properties.

In August 2001, LLI transferred the property at 3380 Chisom Trail to defendants Titus and Sylvia Bujdei in exchange for a promissory note for $400,000. The Bujdeis apparently also received equipment worth $75,000 as part of this transaction.

Plaintiff argued that the timing and nature of these transactions evidenced efforts to hide assets and avoid the judgment. Mary countered that these transfers were legitimate and reflected a division of property pursuant to the

settlement agreement reached in her divorce from Peter. That agreement was incorporated in their Nevada divorce decree.

The trial court entered judgment in favor of plaintiff. The judgment provided: "Plaintiff has met the burden of proof with regard to each of the elements necessary to sustain a cause of action to set aside the fraudulent transfers in this case. Plaintiff shall be entitled to the following relief: 1) That Defendants [Peter], [Mary], Roxanna Bucurenciu, the Petru Bucurenciu Family Trust, [LLI], Sylvia Bujdei and Titus Bujdei and each of them engaged in a conspiracy to defraud Plaintiff as defined in [the UFTA] causing Plaintiff damages in the amount of his attorney's fees and costs; 2) that the transfer of 3400 Chisom Trail from the Petru Bucurenciu Family Trust to Defendant [LLI] was fraudulent as to Plaintiff and the court will set aside that transfer; 3) that Plaintiff may foreclose on 3400 Chisom Trail for partial satisfaction of his judgment against [Peter] in [the prior litigation] and all Defendants in this case; 4) that transfer of 2013 North Cirby Way from Defendant Petru Bucurenciu Family Trust to Defendant [LLI] was fraudulent as to Plaintiff; 5) the subsequent sale of 2013 North Cirby Way by Defendant [LLI] and [Mary] was fraudulent as to Plaintiff; 6) the transfer of 3380 Chisom Trail from Defendant Petru Bucurenciu Family Trust to Defendant [LLI] was fraudulent as to Plaintiff; 7) the transfer of 3380 from Defendant [LLI] to Defendant Titus and Sylvia Bujdei was fraudulent and the court will set aside that transfer; 8) that Plaintiff may foreclose on 3380 Chisom Trail for partial satisfaction of his judgment against [Peter] in [the prior litigation] and all Defendants in this case; and 9) that Plaintiff may seize or foreclose on any assets owned by any Defendant for satisfaction of Plaintiff's judgment in [the prior litigation] or this case."

The court did not award plaintiff punitive damages, attorney fees, or costs.

The court added: "[Mary's] affirmative defense that she [is] divorced from [Peter] does not bar Plaintiff from recovery in this case. Although the Nevada divorce decree is valid insofar as it dissolves the marriage, the property transfers integral to the divorce were not perfected pursuant to Nevada law and therefore not valid as to third persons pursuant to Nevada law. [¶] As a separate and independent ground on the denial of this defense, [Mary] was not an innocent spouse in this matter, the court finding that she knew of the existence of Plaintiff's claim prior to the transfers complained of by Plaintiff, and the property transfers in which she participated with her husband and daughter (Co-Defendants [Peter] and Roxanna Bucurenciu) were in furtherance of her scheme to prevent Plaintiff from foreclosing on such properties to satisfy Plaintiff's claim and/or judgment."

Defendants Mary and LLI appeal.

DISCUSSION

I, II*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

III

*Relief Awarded Under the UFTA*

Defendants offer a variety of contentions in asserting that the court erred in granting relief under the UFTA. None is persuasive.

Initially, we note that defendants present a skewed view of the facts by reiterating that the challenged transactions were simply part of Peter and Mary's property settlement agreement and part of Mary's financial planning needs, not evidence of a plot to bilk plaintiff out of his judgment. The court, however, concluded otherwise, stating explicitly in its judgment that Mary "was not an innocent spouse in this matter, the court finding that she knew of the existence of Plaintiff's claim prior to the transfers complained of by Plaintiff, and the property transfers in which she participated with her husband and daughter were in furtherance of her scheme to prevent Plaintiff from foreclosing on such properties to satisfy Plaintiff's claim and/or judgment." While defendants no doubt wish this language would go away, wishing does not make it so. As we explain, the court's characterization of defendants' motives dooms many of defendants' claims. The substantial evidence rule dooms the rest.

■ "[W]e may not confine our consideration to isolated bits of evidence, but must view the whole record in a light most favorable to the judgment, resolving all evidentiary conflicts and drawing all reasonable inferences in favor of the decision of the trial court. [Citation.] We may not substitute our view of the correct findings for those of the trial court; rather we must accept any reasonable interpretation of the evidence which supports the trial court's decision. However, we may not defer to that decision entirely. '[I]f the word "substantial" means anything at all, it clearly implies that such evidence must be of ponderable legal significance. Obviously the word cannot be deemed synonymous with "any" evidence. It must be reasonable in nature, credible, and of solid value; it must actually be "substantial" proof of the essentials which the law requires in a particular case.' " (*Beck Development Co. v. Southern Pacific Transportation Co.* (1996) 44 Cal.App.4th 1160, 1203–1204 [52 Cal.Rptr.2d 518].)

---

*See footnote, *ante*, page 825.

We turn to each of defendants' claims.

## A. *Evidence of Actual Fraud*

Despite the evidence outlined above, defendants nonetheless assert that there was no evidence of actual fraud to support relief. Defendants' claim is plainly unmeritorious.

■ As we have already noted, a transfer made by a debtor is fraudulent under the UFTA if the debtor made the transfer with the "actual intent to hinder, delay, or defraud any creditor of the debtor." (§ 3439.04, subd. (a)(1).) Whether a conveyance was made with fraudulent intent is a question of fact, and proof often consists of inferences from the circumstances surrounding the transfer. (*Annod Corp. v. Hamilton & Samuels* (2002) 100 Cal.App.4th 1286, 1294 [123 Cal.Rptr.2d 924].) ■ Over the years, courts have considered a number of factors, the "badges of fraud" (*id.* at p. 1298) described in a Legislative Committee comment to section 3439.04, in determining actual intent. (See *Annod Corp. v. Hamilton & Samuels, supra,* at pp. 1298–1299.) Effective January 1, 2005, those factors are now codified at section 3439.04, subdivision (b) and include considerations such as whether the transfer was made to an insider (§ 3439.04, subd. (b)(1)), whether the transferee retained possession or control after the property was transferred (§ 3439.04, subd. (b)(2)), whether the transfer was disclosed (§ 3439.04, subd. (b)(3)), whether the debtor had been sued or threatened with suit before the transfer was made (§ 3439.04, subd. (b)(4)), whether the value received by the debtor was reasonably equivalent to the value of the transferred asset (§ 3439.04, subd. (b)(8)), and similar concerns. According to section 3439.04, subdivision (c), this amendment "does not constitute a change in, but is declaratory of, existing law."

■ In defendants' mind, only two factors are present here, namely, that the transfer was made to an insider and was made after plaintiff sued Peter, and therefore cannot establish actual intent. Setting aside the question of whether defendants properly count the number of factors present, we note a more fundamental problem with defendants' approach: these factors do not create a mathematical formula to establish actual intent. There is no minimum number of factors that must be present before the scales tip in favor of finding of actual intent to defraud. This list of factors is meant to provide guidance to the trial court, not compel a finding one way or the other. (See *Annod Corp. v. Hamilton & Samuels, supra,* 100 Cal.App.4th at pp. 1298–1299.)

■ Here, abundant evidence was presented that defendants worked together to hide assets from plaintiff. A finding of actual intent was virtually compelled. Defendants' claims to the contrary are belied by the record.

### B. *Value of 3380 Chisom Trail*

Defendants assert that the property at 3380 Chisom Trail was not an asset for purposes of the UFTA because it was encumbered for more than its fair market value. However, the evidence reflects that the property's fair market value was more than defendants claim.

 Section 3439.01, subdivision (a)(1) excludes from the definition of "asset" under the UFTA the property of a debtor "to the extent it is encumbered by a valid lien." The property at 3380 Chisom Trail was encumbered with a loan of approximately $400,000. Defendants note that LLI transferred this property to the Bujdeis in 2001 for no money down and a promissory note for $400,000; under these circumstances, they argue, the encumbrances and fair market value were equivalent and the property was not an asset for purposes of the UFTA.

While the record reflects that the property was transferred in exchange for a note equivalent to the encumbrance amount, the evidence also suggested this transaction was less than aboveboard. In March 1999, Mary had estimated the value of this property at $500,000 and estimated the equipment on site at $75,000. An appraiser subsequently valued the property at $530,000. When the title company preparing the title report for this transaction uncovered the pending judgment against Peter, the parties decided not to use an escrow company. Instead, LLI transferred the property to the Bujdeis in exchange for a promissory note for $400,000. The Bujdeis apparently also received $75,000 worth of equipment used in operating the residential care facility on the site.

The evidence leads to the inference that Mary was more interested in transferring the property to the Bujdeis than in obtaining its fair market value. The Bujdeis acquired the property for far less than its appraised worth. The fact that the amount promised by the Bujdeis did not exceed the encumbrance amount is irrelevant under these circumstances. The court properly concluded that the property at 3380 Chisom Trail was worth more than it was sold for, and was therefore an asset for purposes of the UFTA.

### C. *Equalizing Payments*

Defendants assert the court erred in granting relief because Mary transferred the property in good faith and for value. The evidence supports the trial court's decision.

Section 3439.08, subdivision (a), provides: "A transfer or an obligation is not voidable [under the UFTA] against a person who took in good faith and for a reasonably equivalent value or against any subsequent transferee or obligee."

Mary asserts that since she did not learn of plaintiff's judgment against Peter until 1999, she could not have been acting in bad faith when she transferred the properties in 1998. That ignores the fact that plaintiff filed suit against Peter in 1997 for acts that occurred in 1995 and 1996. Mary was apparently aware of the underlying financial dealings between plaintiff and Peter and admitted that she knew in January 1997 that plaintiff had filed suit against Peter for more than $200,000. The transfers occurred after Mary knew that a judgment against Peter might be forthcoming. Transfers made under those circumstances do not evidence good faith.

■■■ Mary also insists that she paid Peter $400,000 to compensate him for the Chisom Trail properties. The fact that Mary testified to such payments did not obligate the court to accept that testimony. No evidence to support this claim was introduced. "[S]o long as the trier of fact does not act arbitrarily and has a rational ground for doing so, it may reject the testimony of a witness even though the witness is uncontradicted." (*Beck Development Co. v. Southern Pacific Transportation Co., supra*, 44 Cal.App.4th at p. 1204.)

Mary raises related issues concerning the nature of the community property available to satisfy the judgment. Her argument is predicated on her insistence that she and Petru "had been living separate and apart since 1995." Evidence adduced at trial, however, demonstrated otherwise. The settlement agreement states the parties separated in 1998, but Peter and Mary showed a joint address on loan documents and financial statements beyond that date. Under these circumstances, the court properly concluded that the entire value of each asset was community in nature.

### D. *Transfer of 2013 North Cirby Way*

Defendants contend there was no fraudulent transfer of the property at 2013 North Cirby Way. Although this property was assigned to Peter in the property settlement agreement, it was transferred to LLI, Mary's company. Defendants insist that the transfer to LLI was done by mistake, and they contend that when the property was sold to a third party for $40,000, those proceeds were given to Peter as required by the property settlement agreement. Again, defendants present a distorted view of the evidence.

The trial court specifically stated in its judgment that "the transfer of 2013 North Cirby Way from Defendant Petru Bucurenciu Family Trust to Defendant [LLI] was fraudulent as to Plaintiff" and "the subsequent sale of 2013 North Cirby Way by Defendant [LLI] and [Mary] was fraudulent as to Plaintiff." The court discounted Mary's claim that the transfer to LLI was a mistake and unintentional, and instead determined that this was part of

defendants' plan to hide assets from plaintiff. The court's conclusion that Mary was actively involved in fraudulently transferring property effectively puts an end to any claim of innocent mistake and good faith transfer.

### E. *Evidence of Conspiracy*

Defendants raise several contentions challenging the court's determination that defendants conspired with each other. None has merit.

■ First, defendants contend that there can be no conspiracy because there were no damages. "Damages are an essential element of a cause of action for conspiracy." (*Lyons v. Security Pacific Nat. Bank* (1995) 40 Cal.App.4th 1001, 1022 [48 Cal.Rptr.2d 174].) Here, the court expressly found that defendants engaged in a conspiracy to defraud plaintiff, "causing Plaintiff damages in the amount of his attorney's fees and costs." The fact that the court subsequently struck the declaration of plaintiff's attorney in support of a motion for fees and costs and did not award those expenses to plaintiff does not mean that they were not incurred.

■ Second, citing *Applied Equipment Corp. v. Litton Saudi Arabia Ltd.* (1994) 7 Cal.4th 503, 510–514 [28 Cal.Rptr.2d 475, 869 P.2d 454] (*Applied Equipment*), defendants contend there can be no conspiracy because there is no underlying tort. "Conspiracy is not a cause of action, but a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration. [Citation.] By participation in a civil conspiracy, a coconspirator effectively adopts as his or her own the torts of other coconspirators within the ambit of the conspiracy." (*Id.* at pp. 510–511.)

At issue in *Applied Equipment* was whether a contracting party could be held liable in tort for conspiracy to interfere with its own contract. The Supreme Court answered that question in the negative. (*Applied Equipment, supra,* 7 Cal.4th at pp. 507–508.) The case before us, however, is not based in contract. Defendants fail to recognize that a claim under the UFTA in fact involves tortious conduct. In fraudulently transferring property, tortious conduct occurred.

Third, defendants contend that conspiracy cannot be established because communications between defendants were privileged under section 47, subdivision (c), which protects communications between interested parties. But evidence of a conspiracy was not predicated on communications between defendants but on their actions. It was the timing of transfers and the circumstances relating to those transfers that led the court to conclude that defendants conspired to defraud plaintiff. This case is not based on potentially privileged communications.

On a more fundamental level, defendants overemphasize the role the conspiracy cause of action played in this case. The conspiracy allegations served to bolster and explain plaintiff's claims under the UFTA. Plaintiff asserted that defendants fraudulently transferred property, and presented abundant evidence to support that claim. Whether defendants conspired to do so has no effect on the judgment: the transfers were fraudulent and plaintiff was entitled to relief.

### F. *Full Faith and Credit*

Defendants contend the court's judgment fails to give full faith and credit to Peter and Mary's Nevada divorce decree, which incorporated the property settlement agreement. Citing various provisions of Nevada law, defendants contend the property settlement agreement was valid and binding on California courts. We assume for purposes of argument that the settlement agreement is valid. Nonetheless, defendants claim fails because it is predicated on a misunderstanding of the full faith and credit doctrine.

■■■ Article 4, section 1 of the United States Constitution provides in relevant part: "Full faith and credit shall be given in each state to the public acts, records, and judicial proceedings of every other state." This provision applies to give "judgments within the jurisdiction of the rendering state the same faith and credit in sister states as they have in the state of the original forum." (*Johnson v. Muelberger* (1951) 340 U.S. 581, 584 [95 L.Ed. 552, 556, 71 S.Ct. 474].) By virtue of this clause, a state "must give full faith and credit to an out-of-state divorce by barring either party to that divorce who has been personally served or who has entered a personal appearance from collaterally attacking the decree. Such an attack is barred where the party attacking would not be permitted to make a collateral attack in the courts of the granting state." (*Id.* at p. 587 [95 L.Ed. at p. 557].)

Here, of course, there is no attack on the divorce judgment itself. Instead, defendants assert that plaintiff cannot attack the property settlement without violating principles of full faith and credit. We disagree. Contrary to defendants' claim, the Nevada judgment is not "unassailable." A fraudulent property settlement may in fact be challenged.

■■■ Under California law, the UFTA can be applied to a property settlement agreement. (*Mejia v. Reed, supra,* 31 Cal.4th at p. 669, disapproving *Gagan v. Gouyd* (1999) 73 Cal.App.4th 835 [86 Cal.Rptr.2d 733].) "A transfer before dissolution can be set aside as a fraudulent conveyance. [Citations.] A transfer after dissolution can be set aside under the clear terms of the UFTA. When the court divides the marital property in the absence of an agreement by the parties, it must divide the property equally [citation],

which provides some protection for a creditor of one spouse only. In view of this overall policy of protecting creditors, it is unlikely that the Legislature intended to grant married couples a one-time-only opportunity to defraud creditors by including the fraudulent transfer in [a property settlement agreement]." (*Mejia v. Reed, supra,* at p. 668.)

 Nevada has also enacted the UFTA (Nev. Rev. Stat., § 112.140 et seq.) "to further the substantive social policy of assuring that the efforts of judgment creditors and others to satisfy their claims will not be defeated by fraudulent transfers." (*Casentini v. Ninth Judicial Dist. Court* (1994) 110 Nev. 721 [877 P.2d 535, 540].) As part of that statutory scheme, Nevada Revised Statutes section 112.250 provides that the UFTA "must be applied and construed to effectuate its general purpose to make uniform the law with respect to the subject of this chapter among states enacting it."

 Nevada courts grant relief from fraudulent property settlement agreements. (See, e.g., *Carlson v. Carlson* (1992) 108 Nev. 358 [832 P.2d 380, 382–383].) Given its enactment of the UFTA, we have no doubt that Nevada would reach the same conclusion as California and find the UFTA applicable to property settlement agreements. The full faith and credit clause requires a court to give a judgment the same deference it would be accorded in the rendering state. Because a fraudulent settlement agreement may be attacked in Nevada, it may also be attacked in California. There is no constitutional violation under these circumstances.

### G. Court's Power to Fashion Remedy

Defendants contend the court exceeded its jurisdiction in entering a money judgment against all defendants for the full amount necessary to satisfy the underlying judgment, $547,574.94. Defendants' claim is meritless.

 As already noted, section 3439.07 outlines the remedies under the UFTA, which include voiding a transfer "to the extent necessary to satisfy the creditor's claim." (§ 3439.07, subd. (a)(1).) Here, the trial court set aside the transfers of 3380 and 3400 Chisom Trail and authorized plaintiff to foreclose on those properties. In arguing that the court's order exceeded the

limits of this provision, defendants ignore a critical statutory provision. Section 3439.07, subdivision (a)(3)(C), empowers the court to award "[a]ny other relief the circumstances may require." The court acted well within its discretion in fashioning relief to remedy defendants' fraudulent conduct. (See *Kirkeby v. Superior Court, supra*, 33 Cal.4th at p. 652.) There was no error.

## DISPOSITION

The judgment is affirmed. Plaintiff is awarded costs on appeal.

Blease, Acting P. J., and Raye, J., concurred.