**NOT FOR PUBLICATION**

## UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No. CC-16-1041-LNTa |
| CLIFFORD ALLEN BRACE, JR., | Bk. No. 6:11-bk-26154-SY |
| Debtor. | Adv. No. 6:11-ap-02053-SY |

CLIFFORD ALLEN BRACE, JR., INDIVIDUALLY AND AS THE TRUSTEE OF THE CRESCENT TRUST DATED JULY 30, 2004; ANH N. BRACE, INDIVIDUALLY AND AS THE TRUSTEE OF THE CRESCENT TRUST DATED JULY 30, 2004,

　　　　　　Appellants,

v.

STEVEN M. SPEIER, Chapter 7 Trustee,

　　　　　　Appellee.

**MEMORANDUM**[*]

Argued and Submitted on January 19, 2017
at Pasadena, California

Filed - March 15, 2017

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Scott Ho Yun, Bankruptcy Judge, Presiding

_____

Appearances:　　Stephen R. Wade argued for appellants; Matthew W. Grimshaw of Marshack Hays LLP argued for appellee.

_____

---

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8024-1.

Before: LAFFERTY, TAYLOR, and NOVACK,[**] Bankruptcy Judges.

## INTRODUCTION

Pre-petition, Debtor formed a living trust, named his non-debtor spouse as the sole beneficiary, and transferred into it his interests in real properties formerly held by Debtor and his spouse as joint tenants. At the time of the transfers, Debtor was a defendant in state court litigation; a default judgment was entered in that litigation shortly after the transfers. Debtor and his spouse testified that the transfers were for her sole benefit as part of long-contemplated estate planning, and from the face of the relevant documents, the transfers to the trust appeared to be for the sole benefit of Debtor's spouse. Post-transfer, however, Debtor and his spouse ignored the stated purpose of the transfers and continued to treat the trust property as they had pre-transfer.

After Debtor filed his chapter 7[1] petition, the trustee filed an adversary proceeding against Debtor and his non-debtor spouse seeking to avoid the transfers under the California Uniform Fraudulent Transfer Act ("CUFTA") and other theories. After a one-day trial, the bankruptcy court entered judgment in favor of the chapter 7 trustee. On reconsideration, the bankruptcy court amended the judgment to clarify that while the

[**] Hon. Charles Novack, United States Bankruptcy Judge for the Northern District of California, sitting by designation.

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, "Rule" references are to the Federal Rules of Bankruptcy Procedure, and "Civil Rule" references are to the Federal Rules of Civil Procedure.

-2-

avoidance of the transfers restored title to the Debtor and his spouse as joint tenants, under the court's understanding of the effect of California's presumptions involving the manner in which married couples are deemed to hold real property, the properties were community property. Consequently, the court determined that the estate held the entire interest in all of the properties that had been improperly transferred to the trust.

Debtor and his spouse appeal the bankruptcy court's findings that the transfers were avoidable as actually fraudulent transfers and that the estate has a deemed community property interest in the recovered properties.

In this unpublished memorandum, we AFFIRM the decision of the bankruptcy court with respect to its findings that the transfers were avoidable as actually fraudulent transfers. In a separate published opinion, we also AFFIRM the bankruptcy court's ruling that the recovered properties were restored to community property status and thus were fully recoverable by the bankruptcy estate.

<strong>FACTS</strong>

**A. Pre-Petition Events**

Debtor and his non-debtor spouse, Anh N. Brace, were married in 1972. Debtor is a real estate consultant with approximately 30 years of experience as a licensed real estate agent, broker, and consultant. During the marriage, Appellants acquired their residence in Redlands, California, a rental property in San Bernardino, California, and a parcel of real property in Mohave, Arizona (collectively, the "Properties"). Appellants took title to each of the Properties as "husband and wife as joint tenants."

On July 30, 2004, Debtor formed the Crescent Trust. The instrument creating the Crescent Trust states that it is an irrevocable trust and that Debtor is the sole trustee; Ms. Brace is the sole beneficiary of the trust. The trust instrument was not recorded. Shortly thereafter, Debtor executed and had recorded trust transfer deeds transferring his interests in the Redlands and San Bernardino properties into the Crescent Trust for no consideration. Additionally, the box on each deed was checked indicating that the transfer was to a revocable trust. Thus, although the unrecorded trust instrument for the Crescent Trust appeared to place the trust assets out of the reach of creditors, the public record reflected that the trust was revocable and thus its assets were potentially subject to execution by creditors and subject to disposition by the trustor. See Laycock v. Hammer, 141 Cal. App. 4th 25, 29-30 (2006) (in order to reach trust assets, creditor must show that trust was revocable); Cal. Prob. Code § 18200.

For reasons that were not explained, Ms. Brace did not transfer her interests in the Redlands and San Bernardino properties into the Crescent Trust. Also, no deed transferring the Mohave property was ever recorded, although Debtor testified that such a deed was prepared. In the parties' joint pre-trial statement, Appellants stipulated that the Mohave property was an asset of the bankruptcy estate.

At the time of the transfers, Debtor was a defendant in litigation in San Bernardino County Superior Court; a default judgment in the amount of $60,000 was entered against the Debtor in that litigation approximately one month after the transfers

-4-

occurred.

After the Redlands and San Bernardino properties were transferred into the Crescent Trust, Debtor and Ms. Brace continued to live in the Redlands property; they also used those properties to secure bail bonds in a criminal matter. Debtor never filed tax returns for the Crescent Trust.[2]

**B.    Post-Petition Events**

Debtor filed a chapter 7 petition on May 16, 2011, and Robert L. Goodrich was appointed chapter 7 trustee ("Trustee").[3] Debtor did not list any real property on Schedule A. At Debtor's 341 meeting, he testified that he had owned no real property in the prior two years. He also testified that Ms. Brace owned no property that was not listed in his schedules.

On December 15, 2011, Trustee filed an adversary proceeding against Appellants, individually and in their capacities as trustees of the Crescent Trust,[4] seeking: a declaration that the Properties were property of the bankruptcy estate; a judgment quieting title to the Properties in the bankruptcy estate; turnover of any of the Properties determined to be property of

---

[2] At the time he formed the Crescent Trust, Debtor owned two other parcels of real property, one in Palm Springs and the other in Moreno Valley, which he held as his sole and separate property. Concurrently with the formation of the Crescent Trust, Debtor formed two additional trusts, the Cardillo Trust and the Casilla Trust. Debtor transferred into those trusts his interests in the Palm Springs and Moreno Valley properties, respectively.

[3] Appellee Steven M. Speier was substituted as chapter 7 trustee after Mr. Goodrich resigned in December 2015.

[4] As noted, Ms. Brace is not a trustee of the Crescent Trust.

the estate; and avoidance and recovery of Debtor's transfers of the Redlands and San Bernardino properties into the Crescent Trust as actually and/or constructively fraudulent transfers under Cal. Civ. Code § 3439.04(a) (collectively, the "Fraudulent Transfer Claims"); and revocation of Debtor's discharge under §§ 727(d)(1) and (d)(2).

The bankruptcy court ordered the issues bifurcated for trial pursuant to Civil Rule 42(b), applicable via Rule 7042, with the Fraudulent Transfer Claims being tried before the revocation of discharge claims. Trial was held on the Fraudulent Transfer Claims on May 11, 2015. The witnesses were Debtor, Ms. Brace, Trustee, and Burke Huber, an attorney who authenticated Debtor's deposition testimony from a separate lawsuit. Direct testimony was by declaration;[5] Debtor, Ms. Brace, and Trustee were cross-examined at trial. The bankruptcy court thereafter made oral findings and conclusions in favor of Trustee on the actually fraudulent transfer claim.

The bankruptcy court found: that the Crescent Trust was an illegal trust and should be disregarded because Debtor had created it for the sole purpose of defrauding creditors; that the transfers of the Redlands and San Bernardino properties into the Crescent Trust were actually fraudulent transfers; that the Crescent Trust was Debtor's alter ego; that Ms. Brace was not a good faith transferee; and that the Trustee was entitled to avoid the unrecorded transfer of the Mohave property as a hypothetical

---

[5] The bankruptcy court sustained certain objections to the declaration testimony. No party has assigned error to those rulings.

bona fide purchaser under § 544. For all of these reasons, the bankruptcy court concluded that the transfers of the Redlands and San Bernardino properties into the Crescent Trust were avoidable and recoverable by Trustee as property of the estate.

The court entered judgment on September 25, 2015. The judgment provided that the Properties were property of the estate and were to be turned over to Trustee. Defendants timely moved to reconsider and amend the judgment, arguing that the judgment should have provided that the Properties were owned one half by Debtor and one half by Ms. Brace as tenants in common and that only Debtor's interests in the Properties, and not Ms. Brace's, were property of the estate. After oral argument, the bankruptcy court issued its findings on the record, granting the motion to reconsider in part: the bankruptcy court entered an amended judgment clarifying that although the Properties were restored to joint tenancy as a matter of title, they were community property under California law and were thus property of the estate.

Appellants timely appealed.[6]

**JURISDICTION**

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(E), (H), and (J). We have jurisdiction under 28 U.S.C. § 158.

**ISSUES**

A.   Whether the bankruptcy court erred in finding that the

---

[6] Because the amended judgment did not dispose of all the claims in the adversary proceeding, after this appeal was filed the parties obtained a second amended judgment from the bankruptcy court that contained a Rule 54(b) certification.

transfers of the Redlands and San Bernardino properties into the Crescent Trust were actually fraudulent transfers.

B. Whether the bankruptcy court erred in finding that the Crescent Trust was Debtor's alter ego.

C. Whether the bankruptcy court erred in finding that Ms. Brace was not a good faith transferee.

**STANDARDS OF REVIEW**

We review the bankruptcy court's findings of fact for clear error, and its conclusions of law de novo. Carrillo v. Su (In re Su), 290 F.3d 1140, 1142 (9th Cir. 2002). A finding is clearly erroneous "when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Anderson v. City of Bessemer City, N.C., 470 U.S. 564, 573 (1985) (citation omitted). Where two permissible views of the evidence exist, the factfinder's choice between them cannot be clearly erroneous. Id. at 574. We are to give "due regard to the trial court's opportunity to judge the witnesses' credibility." Civil Rule 52(a)(6) (incorporated via Rule 7052). We also give deference to inferences drawn by the trial court. Beech Aircraft Corp. v. United States, 51 F.3d 834, 838 (9th Cir. 1995).

**DISCUSSION**

**A. The bankruptcy court did not err in finding that the transfers of the Redlands and San Bernardino properties into the Crescent Trust were avoidable as actually fraudulent transfers.**

**1. The bankruptcy court correctly found that the transfers were made with actual fraudulent intent.**

California Civil Code § 3439.04 provides:

-8-

(a) A transfer made or obligation incurred by a debtor is voidable as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation as follows:

(1) With actual intent to hinder, delay, or defraud any creditor of the debtor.

The statute further provides that, in determining actual intent to defraud, the court may consider the following factors:

(1) Whether the transfer or obligation was to an insider.

(2) Whether the debtor retained possession or control of the property transferred after the transfer.

(3) Whether the transfer or obligation was disclosed or concealed.

(4) Whether before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit.

(5) Whether the transfer was of substantially all the debtor's assets.

(6) Whether the debtor absconded.

(7) Whether the debtor removed or concealed assets.

(8) Whether the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred.

(9) Whether the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred.

(10) Whether the transfer occurred shortly before or shortly after a substantial debt was incurred.

(11) Whether the debtor transferred the essential assets of the business to a lienor that transferred the assets to an insider of the debtor.

Cal. Civ. Code § 3439.04(b).

These eleven factors:

-9-

> provide neither a counting rule, nor a mathematical formula. No minimum number of factors tips the scales toward actual intent. A trier of fact is entitled to find actual intent based on the evidence in the case, even if no "badges of fraud" are present. Conversely, specific evidence may negate an inference of fraud notwithstanding the presence of a number of "badges of fraud."

Wolkowitz v. Beverly (In re Beverly), 374 B.R. 221, 236 (9th Cir. BAP 2007), aff'd in part, dismissed in part, 551 F.3d 1092 (9th Cir. 2008) (citations omitted).

The bankruptcy court found that the presence of numerous badges of fraud supported a finding that the Crescent Trust was created for the purpose of defrauding creditors and thus was an illegal trust that should be disregarded. Specifically, the bankruptcy court found that the following factors supported a finding of actual fraud: (1) the transfers to the Crescent Trust were to an insider because Ms. Brace was the sole beneficiary of the Crescent Trust; (2) the Debtor retained possession and control of the transferred properties--he continued to live in the Redlands Property, and Debtor used the San Bernardino Property as collateral to post bonds for himself and a friend in criminal matters; (3) the Debtor concealed the nature of the transfers by claiming on the trust transfer deeds that the properties were transferred into a revocable trust; (4) at the time of the transfers the Debtor was a defendant in state court litigation; (5) the Debtor removed or concealed the properties by transferring them to the Crescent Trust; and (6) the Debtor transferred the properties shortly before a substantial debt was incurred, that is, the entry of the $60,000 default judgment.

Appellants argue that the bankruptcy court's finding of

actual fraudulent intent was clearly erroneous because there was no evidence that Debtor had notice of the state court lawsuit which resulted in entry of the default judgment. Debtor testified that he did not know of the lawsuit because he was not personally served with the summons and complaint in that action, which were served only by publication. Additionally, as discussed below, Appellants contend that the transfers to the Crescent Trust were done for estate planning purposes and to memorialize the couple's longstanding agreement for Ms. Brace to hold title to the Properties.

These arguments are not persuasive; they ignore the trial court's function in assessing credibility of witnesses and this Panel's duty to defer to that assessment, and they misconstrue the rationale for the court's reliance on "badges of fraud" to assess fraudulent intent.

As should be obvious, fraudulent intent is not readily conceded and, for that reason among others, not easily proven. In these instances, courts have access to two tools to assist them in determining fraudulent intent: (1) assessment of a witness's credibility via observing his or her demeanor and testimony at trial, and (2) consideration of the "badges of fraud" that provide essentially a checklist of the circumstances that typically surround fraudulent acts.

**a. This Panel must defer to the trial court's findings regarding credibility.**

At the outset of its ruling, the bankruptcy court observed that neither Debtor nor Ms. Brace were credible witnesses. The bankruptcy court noted that Debtor was "alert, educated, [and]

sophisticated" but that he had a "very selective memory": he had good recall of events that were in his favor, but his memory failed him when he was questioned by Trustee's counsel. Regarding Ms. Brace, the bankruptcy court noted that she testified "like she was reading a script that her husband or someone gave her to say. But even then, she was neither convincing nor credible."

We must defer to the bankruptcy court's credibility determination to the extent it was based on the witnesses' demeanor.

> When factual findings are based on determinations regarding the credibility of witnesses, we give great deference to the bankruptcy court's findings, because the bankruptcy court, as the trier of fact, had the opportunity to note variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said.

Retz v. Samson (In re Retz), 606 F.3d 1189, 1196 (9th Cir. 2010)(citing Anderson v. City of Bessemer City, 470 U.S. 564, 575 (1985)).

Moreover, there was ample evidence in the record to support an inference that Debtor was not an honest individual: (1) Debtor had a history of using multiple aliases that he did not disclose in his bankruptcy petition; (2) at Debtor's 341 meeting, he contradicted deposition testimony he gave in 2012 in state court litigation; (3) Debtor pled guilty to forgery in 2010; and (4) according to the declaration filed in the superior court in support of the state court plaintiffs' request to serve defendants by publication, plaintiffs made the request because, in prior litigation against the same defendants, plaintiffs' counsel had been unable to locate Debtor:

-12-

> In the [prior lawsuit] . . . I never could find . . . WALTER HARRIS or CLIFF BRACE and am not certain that these are their real names. . . . I believe the WILSON DEFENDANTS have set up P.O. Boxes, created false names, and false entities in order to evade service. . . . I am not certain that Defendants JUAN GARCIA, WALTER HARRIS, NANCY NETTER, C. ALLEN, or CLIFF BRACE are even real people. I have been unable to find any information that they exist.[7]

In granting the request, the state court necessarily found that defendants had a history of evading service, which warranted service by publication.

Because there is nothing in the record to suggest that the bankruptcy court's credibility determinations were erroneous, we defer to those determinations.

**b. The bankruptcy court correctly applied the "badges of fraud" to determine that the Debtor made the transfers with actual intent to defraud creditors.**

Appellants claim that the trial court incorrectly determined that the transfers were made with actual intent to defraud, because there was no evidence that Debtor knew about the pending state court claim at the time of the transfers. This assertion is erroneous.

First, Appellants ignore the fact that the trial court found that six separate badges of fraud were present with respect to the challenged transfers and that only two related to the existence of litigation: whether Debtor had been sued before the transfer was made and whether the transfer occurred shortly before a substantial debt was incurred. Thus, even if we agreed

---

[7] Debtor admitted at trial that he had used the names "C. Allen," "Robert Keller," and "David Walton" as aliases for various purposes.

-13-

with Appellants that the trial court wrongly relied on the existence of litigation, or the imminent entry of a judgment, as badges of fraud, there was ample, and unchallenged, support in the record for a finding of fraudulent intent; there are four additional badges of fraud present here.

Second, and as noted above, the bankruptcy court need not find the presence of a majority, or even any set number, of the enumerated badges of fraud to conclude that a party likely engaged in fraud. Rather, the court is entitled to conclude that a party acted with actual intent to defraud creditors based on the court's reasonable assessment of all the facts and circumstances; the badges of fraud are merely a tool to assist in that task.

Third, Debtor's premise that unless the court could essentially demonstrate that the Debtor "knew" a fact that he denied knowing, it could not conclude that he had acted with fraudulent intent, requires exactly the sort of impossible "seeing inside the debtor's conscience" that the legislature sought to avoid by compiling the badges of fraud. To require demonstrable certainty of a debtor's knowledge would completely obviate the utility of consideration of circumstantial, and reliable, evidence. See In re Beverly, 374 B.R. at 235 ("Since direct evidence of intent to hinder, delay or defraud is uncommon, the determination typically is made inferentially from circumstances consistent with the requisite intent.") (citing Filip v. Bucurenciu, 129 Cal. App. 4th 825, 835, 28 Cal. Rptr. 3d 884, 890 (2005)).

### c. The bankruptcy court was not required to believe Debtor's wholly implausible explanation for the transfers.

Putting aside Debtor's courtroom demeanor and history of deceptive practices, as well as the court's reliance on the existence of numerous "badges of fraud," the bankruptcy court was not required to believe Appellants' version of the reasons for the transfers. Stated plainly, Appellants' testimony concerning the background for and their motivations to conclude the transfers was consistently implausible.

For example, Appellants' contention that the timing of the subject transfers was merely the consummation of a longstanding agreement between spouses to divide the couple's property would require a finding that the timing of the transfers right before judgment was entered against Debtor was purely and entirely coincidental, and would require the court to ignore the numerous suspicious circumstances surrounding the transactions.

In light of these circumstances, any argument in support of Appellants' version of the rationale for these transaction would have to be supported by the most indubitable evidence of their innocent intent. Yet, Appellants offered nothing of any genuinely probative, let alone persuasive, value. Appellants did not present any documentation of the couple's plan to divide their property, nor did they testify to an alternative catalyst for the execution of that plan.

Moreover, there is nothing about the acquisition of the Properties or the history of the financial arrangements between Appellants as a married couple that would objectively support their story that they "always intended" to hold the Properties

separately. There was no contention that the Properties were acquired via inheritance or with separate funds, or any other facts that would support a claim that the Properties should have been categorized as separate property; to the contrary, it is undisputed that the Properties were acquired with community assets. Nor would the fact that the Appellants alternately paid expenses of the Properties, depending on which of them was gainfully employed at various points during the marriage, described in greater detail in subsection C below, suggest a different result. Indeed, it is the nature of a "community" that a married couple acknowledges that they will pool their resources to acquire and maintain property, and there is no requirement that the contributions of the spouses be equal or available at the same time.

We note also certain inconsistencies in the documentation of the transactions that suggest an ulterior motive: first, despite Debtor's vast experience in real estate matters, the trust transfer deeds recited that the transfers were to a revocable trust (rather than an irrevocable trust as set forth in the Trust Agreement) and designated that Debtor was the sole grantee. Even though the Properties were held by the couple as joint tenants, there was no evidence that Ms. Brace ever transferred her interests into the Crescent Trust. Debtor proffered no plausible explanation for these inconsistencies, which suggest that Debtor was focused on divesting himself of his interests in the Properties and confusing the state of title to shield the Properties from the impending judgment. And as discussed below, even after the transfers, Appellants continued to treat the

-16-

Properties as their own.

In light of the foregoing, the bankruptcy court did not clearly err in giving Debtor's testimony little to no weight in finding that the transfers were made with actual fraudulent intent. The court also supported its finding of fraudulent intent by reference to numerous badges of fraud that accompanied the transactions. Moreover, the court did not need to find that Debtor knew about the litigation or to believe Debtor's highly implausible "explanations" for his behavior. The finding of actual intent to defraud is supported by the evidence and is not clearly erroneous.

**B. The bankruptcy court did not err in finding that the Crescent Trust was Debtor's alter ego.**

As an alternative theory for recovery of the Properties, the bankruptcy court found that the Crescent Trust was Debtor's alter ego. In determining whether the alter ego doctrine applies to eliminate any distinction between an entity and an individual controlling or dominating that entity, we apply the law of the forum state. In re Schwartzkopf, 626 F.3d at 1037-38. California courts have applied the alter ego doctrine to trusts. Id. at 1038. Alter ego liability exists where two conditions are met: (1) where there is such a unity of interest and ownership that the separateness of the individual and the entity has ceased; and (2) where adherence to the fiction of the separate existence of the entity would sanction a fraud or promote injustice. See id. Factors suggesting an alter ego relationship include: (a) commingling of assets and failure to segregate funds; (b) treatment by an individual of the assets of the

-17-

corporation as his own; (c) the disregard of legal formalities and the failure to maintain arm's length relationships among related entities; and (d) the diversion of assets from a trust by or to another person or entity, to the detriment of creditors, or the manipulation of assets between entities so as to concentrate the assets in one and the liabilities in another. See id.

The bankruptcy court concluded that the Crescent Trust was Debtor's alter ego based on its findings that (1) the trust was formed for a fraudulent purpose; (2) Debtor treated the trust's assets as his own; (3) Debtor disregarded legal formalities by failing to file trust tax returns; and (4) by transferring real property into the trust, Debtor manipulated assets so as to concentrate the assets in one entity and the liabilities in another.

Appellants contend that the bankruptcy court erred in finding that the Crescent Trust was an illegal trust formed for an improper purpose; thus, the second condition required for an alter ego finding was not met. However, as discussed above, the bankruptcy court did not err in that finding. Accordingly, we find no error in the bankruptcy court's ultimate finding that the Crescent Trust was Debtor's alter ego.

**C. The bankruptcy court did not err in finding that Ms. Brace was not a good faith transferee.**

California Civil Code § 3439.08 states, "(a) A transfer or obligation is not voidable under paragraph (1) of subdivision (a) of Section 3439.04, against a person that took in good faith and for a reasonably equivalent value given the debtor or against any subsequent transferee or obligee." A defendant asserting the

-18-

existence of good faith has the burden of proof.  <u>Plotkin v. Pomona Valley Imports, Inc. (In re Cohen)</u>, 199 B.R. 709, 718-19 (9th Cir. BAP 1996).

**1.  Good faith**

It is not necessary that a defendant actually participate in another's fraud, or even be completely aware of the fraud, to fail to qualify as a good faith transferee.  <u>See</u> <u>id.</u> at 719 (transferee lacks good faith if "possessed of enough knowledge of the actual facts to induce a reasonable person to inquire further about the transaction").  <u>See also</u> <u>CyberMedia, Inc. v. Symantec Corp.</u>, 19 F. Supp. 2d 1070, 1075 (N.D. Cal. 1998) (under UFTA, a transferee lacks good faith if he or she (1) colludes with the debtor or otherwise actively participates in the debtor's fraudulent scheme, or (2) has actual knowledge of facts which would suggest to a reasonable person that the transfer was fraudulent).

The bankruptcy court found that although Ms. Brace had not engineered the scheme to defraud, she participated in and benefitted from the scheme:

> [Ms. Brace] may not have been the one who engineered this scheme to create the Crescent Trust and transfer the Debtor's interest in the property to the trust, so to defraud Mr. Brace's creditors.  But she did not act in good faith either.  Maybe she didn't act in bad faith, but she participated in the scheme; and even though her testimony was conflicting, at best, she continues to support her husband's attempt at defrauding his creditors.  So I don't believe she acted in good faith.

Appellants argue that the bankruptcy court erred in finding that Ms. Brace was not a good faith transferee because there was no evidence that she was aware of any fraudulent intent on her

-19-

husband's part or that she had participated in the scheme. Appellant's first point misapprehends the applicable standard-- the bankruptcy court did not need to find that Ms. Brace was aware of Debtor's fraudulent intent. And there was evidence in the record that Ms. Brace knew of and was complicit in the transfers. Importantly, the bankruptcy court found not credible Appellants' explanations for the transfers.

Debtor and Ms. Brace testified in their declarations that the transfers into the Crescent Trust were part of an agreement the couple made early in their marriage to keep their financial affairs separate. Debtor testified that shortly after the couple were married they purchased the San Bernardino Property as their residence. Debtor further testified that while Ms. Brace was in nursing school, Debtor made the payments on the residence, and that after Ms. Brace became employed the payments were made from the couple's joint checking account. According to Debtor, virtually all of the funds in the joint checking account were deposited by Ms. Brace because Debtor did not have regular income at that time.

Debtor's testimony continued: sometime in the 1970s the couple purchased the Redlands Property and made it their residence; the couple agreed prior to 1978 that because Ms. Brace had made the payments on the San Bernardino and Redlands properties that those properties would belong to her. Thereafter, in 2001 and 2004, respectively, Debtor purchased real properties in Moreno Valley and Palm Springs, taking title as a married man as his sole and separate property; Ms. Brace relinquished her interests in those properties.

Debtor testified that he created the trusts for estate planning purposes and to carry out the couple's agreement for Ms. Brace to own the Redlands and San Bernardino properties as her separate property and for Debtor to own the Moreno Valley and Palm Springs properties as his separate property.

Ms. Brace testified in her declaration that the couple had a longstanding oral agreement to keep their financial affairs separate and that the San Bernardino and Redlands properties would belong to Ms. Brace. She further testified that Debtor had set up the Crescent Trust "to place his interest in my properties into an irrevocable living trust to protect that interest for me."

Our review of the record convinces us that the bankruptcy court had ample reason to be skeptical of the Appellant's version of the background to the transfers, and support for its conclusion that Ms. Brace had not met her burden to show she was a good faith transferee.

As an initial matter, we restate the point made earlier in connection with the "actual intent to defraud" analysis, that the bankruptcy court found both Debtor's **and Ms. Brace's** testimony to be not credible. In particular, with respect to Ms. Brace's testimony, the court stated that it was as if she were reading a script that someone (i.e., her husband) had given her--and even in this polished, scripted form, she was not at all convincing.

That conclusion was not only an appropriate exercise of a trial court's prerogative in assessing credibility, it appears entirely justified and accurate in light of Ms. Brace's testimony on cross-examination, which repeatedly contradicted and

-21-

undermined the narrative presented in her declaration. On cross-examination, Ms. Brace testified that she did not remember hearing of the Crescent Trust, did not know why Debtor transferred his interests in the Redlands and San Bernardino properties into the Crescent Trust, and did not remember asking Debtor to do so. Ms. Brace also testified that she did not believe Debtor owed her money for the payments she had made on the San Bernardino property mortgage or that she had paid a disproportionate amount of the expenses on the Redlands property.

The repeated and striking disharmony between the scripted narrative of Ms. Brace's declaration and the spontaneous and apparently quite genuine answers she provided on cross-examination not only raise troubling questions about her credibility but eviscerate her claim to be a good faith transferee. See Filip, 129 Cal. App. 4th at 836, 28 Cal. Rptr. 3d at 891 (affirming trial court's finding that defendant was not a good faith transferee because defendant's testimony was not credible).

That said, the evidence in the record supports the bankruptcy court's finding that Ms. Brace participated in and benefitted from the transfers. Although Ms. Brace gave conflicting testimony regarding her knowledge of the transfers, the bankruptcy court's choice among multiple plausible views of the evidence cannot be clearly erroneous. See Anderson v. City of Bessemer City, 470 U.S. 564, 573-75 (1985). Ms. Brace testified that she was aware that her husband had set up the Crescent Trust "to place his interest in my properties into an irrevocable living trust to protect that interest for me." And

the transfers benefitted Ms. Brace because they effectively conveyed to Ms. Brace her husband's interests in the transferred properties. Although the bankruptcy court did not explicitly find that Ms. Brace was possessed of enough knowledge to put a reasonable person on inquiry notice, the record supports such a finding. Ms. Brace knew about the transfers, and, as discussed in subsection A.1.c. above, no plausible explanation was provided for the timing of the transfers or the irregularities in the documentation of the transactions, and Appellants continued to treat the transferred properties as their own even after the transfers. Under these circumstances, Ms. Brace was on notice that Debtor may have had a fraudulent motive in making the transfers.

For all of these reasons, the bankruptcy court did not err in finding that Appellants had failed to meet their burden of showing that Ms. Brace acted in good faith.

### 2.    Reasonably Equivalent Value

The bankruptcy court correctly found that there was insufficient evidence from which to make a finding that Ms. Brace gave reasonably equivalent value for the transfers. The only valuation evidence presented was Debtor's opinion testimony, to which the bankruptcy court gave no weight: there was no basis to conclude that Debtor was an expert in real property valuations, and the bankruptcy court found implausible that Debtor knew during the bankruptcy what the transferred properties were worth in 2004.

Appellants argue that the undisputed fact that Debtor obtained a $240,000 credit line against his Palm Springs property

-23-

shortly after it was acquired supports an inference that the Palm Springs property was worth an amount reasonably equivalent to the approximately $527,000 of equity transferred by Debtor to the Crescent Trust. The bankruptcy court gave little weight to this evidence, observing that in 2004 lending standards were more relaxed, thus implicitly finding that any extrapolation of value from the amount of the credit line would be inherently unreliable.

Appellants argue that the bankruptcy court's observation regarding 2004 lending standards was speculative and not supported by evidence, but even if we were to disregard that observation, we would not find error in the bankruptcy court's conclusion. In fact, a finding of value of real property based solely on the amount a lender would loan against it would constitute speculation, as the amount that a particular lender would loan is subject to a number of factors. More importantly, the bankruptcy court rejected Debtor's opinion evidence of the value of the Redlands and San Bernardino properties, making impossible any finding as to whether Ms. Brace gave "reasonably equivalent" value.

Therefore, we find no error in the bankruptcy court's conclusion that Appellants failed to carry their burden of proving a good faith transferee defense.

**CONCLUSION**

For these reasons, the bankruptcy court did not err in concluding that the transfers into the Crescent Trust were actually fraudulent, that the Crescent Trust was Debtor's alter ego, or that Ms. Brace was not a good faith transferee.

-24-

Accordingly, we AFFIRM.