**In re NORTHERN MERCHANDISE, INC., Debtor,**

**Frontier Bank, Appellant,**

**v.**

**Ronald G. Brown, Chapter 7 Trustee, Appellee.**

**No. 02–36065.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 2, 2004.

Filed June 14, 2004.

David R. Riley, Seattle, WA, for the appellant.

Donald E. Hacker, Jr., Seattle, WA, for the appellee.

Before LEAVY, WARDLAW, and GOULD, Circuit Judges.

WARDLAW, Circuit Judge:

Frontier Bank ("Frontier") appeals a decision of the Bankruptcy Appellate Panel ("BAP") affirming in part the bankruptcy court's summary judgment in favor of Ronald G. Brown, Chapter 7 Trustee ("Trustee"), in the Trustee's action alleging that Frontier received a fraudulent transfer from Chapter 7 Debtor Northern Merchandise, Inc. ("Debtor"). Specifically, Frontier challenges the BAP's ruling that Debtor did not receive reasonably equivalent value under 11 U.S.C. § 548(a)(1)(B) in exchange for a security interest it granted to Frontier and, thus, Frontier was not protected under 11 U.S.C. § 548(c). We have jurisdiction pursuant to 28 U.S.C. § 1291. Reviewing the bankruptcy court's decision to grant summary judgment de novo, *Conestoga Services Corp. v. Executive Risk Indemnity, Inc.*, 312 F.3d 976, 980 (9th Cir.2002), we reverse.

## I. Background

In 1997, Debtor, a company that sold general merchandise to grocery stores, was incorporated by Paul Weingartner, Gary David, and Paul Benjamin. In February 1998, Frontier loaned $60,000 to the newly formed company. The loan was evidenced by a promissory note in the amount of $60,000, secured by a commercial financing agreement granting Frontier a security interest in Debtor's inventory, chattel paper, accounts, equipment, and general intangibles. The security interest was later perfected by the filing of a Uniform Commercial Code financing statement on February 24, 1998.

In October 1998, Debtor sought a second loan of $150,000 from Frontier to provide Debtor with working capital. Frontier refused to give such a loan to Debtor after determining that Debtor's financial performance did not support an additional direct loan to the company. However, Frontier agreed to loan $150,000 (the "October Loan") to Paul Weingartner, Paul Benjamin, and Stephen Comer, Debtor's shareholders (collectively, "Shareholders"), whose credit warranted such a loan.[1] Frontier understood that the Shareholders would, in turn, allow Debtor to utilize the money to fund its business operations. In fact, the loan transaction was structured so that Frontier deposited the proceeds of the October Loan directly into Debtor's checking account. However, while the funds themselves were transferred directly from Frontier to Debtor, the transaction

---

1. Shareholders were also officers and/or directors of Debtor.

was documented as a loan to Shareholders, who then turned the funds over to Debtor. The October Loan was evidenced by a promissory note in favor of Frontier executed by Shareholders. However, on the same day that Shareholders entered into the October Loan with Frontier, Debtor executed a commercial security agreement granting Frontier a security interest in its inventory, chattel paper, accounts, equipment, and general intangibles.

On March 5, 1999, Debtor ceased doing business, leaving approximately $875,000 in unsecured debt. At the time, Debtor had approximately $400,000 worth of inventory. Debtor transferred the $400,000 worth of inventory to Benjamin News Group, a company owned by shareholder Paul Benjamin, for $125,000.[2] On March 19, 1999, Benjamin News Group paid Frontier, not Debtor, the $125,000, which amount was credited to the October Loan. The remaining $25,000 due on the October Loan was paid to Frontier by the Safeway Corporation from the proceeds of prior sales of inventory to the Safeway Corporation.

On March 22, 1999, creditors filed an involuntary Chapter 7 petition against Debtor, and a trustee was appointed. Debtor scheduled assets of $4,116.17 and debts of $875,847.32. On February 9, 2001, Trustee filed a complaint against Frontier, and thereafter a motion for partial summary judgment, arguing that the grant of the security interest and the $125,000 transfer were fraudulent conveyances under 11 U.S.C. § 548(a). The bankruptcy court granted the motion for summary judgment, holding that a fraudulent conveyance had occurred. On appeal before the BAP, Frontier argued, *inter alia*, that the bankruptcy court erred in finding a fraudulent conveyance because

(1) Debtor received reasonably equivalent value for the security interest and (2) Frontier was a good faith transferee with respect to receipt of the security interest. The BAP ruled in favor of Trustee on both issues.

II. Reasonably Equivalent Value

11 U.S.C. § 548(a)(1) provides: The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily ... received less than a reasonably equivalent value in exchange for such transfer or obligation.

It is well settled that "reasonably equivalent value can come from one other than the recipient of the payments, a rule which has become known as the indirect benefit rule." *Harman v. First Am. Bank (In re Jeffrey Bigelow Design Group, Inc.)*, 956 F.2d 479, 485 (4th Cir.1992). For example, in *Rubin v. Manufacturers Hanover Trust Co.*, the court explained:

a debtor may sometimes receive "fair" consideration even though the consideration given for his property or obligation goes initially to a third person ... although transfers solely for the benefit of third parties do not furnish fair consideration ... the transaction's benefit to the debtor need not be direct; it may come indirectly through benefit to a third person.... If the consideration given to the third person has ultimately landed in the debtor's hands, or if the giving of the consideration to the third person otherwise confers an economic benefit upon the debtor, then the debtor's net worth has been preserved, and

---

**2.** Trustee filed a fraudulent conveyance action against Benjamin News Group and ultimately

recovered $45,000.

[the statute] has been satisfied—provided, of course, that the value of the benefit received by the debtor approximates the value of the property or obligation he has given up.

661 F.2d 979, 991–92 (2d Cir.1981) (internal quotation marks and citations omitted).

*Jeffrey Bigelow* is such an example. In Jeffrey Bigelow, shareholders of a debtor entered into a line of credit agreement with First American Bank for $1,000,000. 956 F.2d at 481. Although the shareholders were the makers of the line of credit, "only the debtor received the draws and all payments were made directly from the debtor to First American." *Id.* Subsequently, "the debtor executed a note for $1,000,000 to [the shareholders] with substantially the same terms as the line of credit between First American and [the shareholders]." *Id.* As the debtor directly repaid First American, its liability on the note to the shareholders likewise decreased. *Id.* Holding that the payments made by the debtor on the shareholders' line of credit did not constitute fraudulent conveyances, the Fourth Circuit reasoned:

> [T]he proper focus is on the net effect of the transfers on the debtor's estate, the funds available to the unsecured creditors. As long as the unsecured creditors are no worse off because the debtor, and consequently the estate, has received an amount reasonably equivalent to what it paid, no fraudulent transfer has occurred.

*Id.* at 484. Because it was "apparent that the transfers [had] not resulted in the depletion of the bankruptcy estate," but rather "served simply as repayment for money received," the Fourth Circuit held that "no fraudulent transfer occurred." *Id.* at 485.

■ As *Jeffrey Bigelow* illustrates, the primary focus of Section 548 is on the net effect of the transaction on the debtor's estate and the funds available to the unse-

cured creditors. *See id.* ("the focus is whether the net effect of the transaction has depleted the bankruptcy estate"); *see also Nordberg v. Republic Nat'l Bank (In re Chase & Sanborn Corp.),* 51 B.R. 739, 740 (Bankr.S.D.Fla.1985) ("the indirect benefit cases are bottomed upon the ultimate impact to the debtor's creditors"); *Rubin,* 661 F.2d at 992 ("decisions in [indirect benefit cases] turn on the statutory purpose of conserving the debtor's estate for the benefit of creditors."). Trustee contends that Debtor's grant of the security interest to Frontier resulted in a $150,000 loss to Debtor's estate and thus the funds available to the unsecured creditors. Trustee reasons that because the transfer of $150,000 from Shareholders to Debtor was technically a capital contribution, rather than a loan, Debtor was under no legal obligation to grant a security interest to Frontier. Therefore, Trustee argues, Debtor would have been justified to not grant the security interest to Frontier, which would have resulted in an additional $150,000 in Debtor's estate.

We reject this formalistic view. Although Debtor was not a party to the October loan, it clearly received a benefit from that loan. In fact, Frontier deposited the $150,000 proceeds of the October Loan directly into Debtor's checking account. Because Debtor benefited from the October Loan in the amount of $150,000, its grant of a security interest to Frontier to secure Shareholder's indebtedness on that loan, which totaled $150,000, resulted in no net loss to Debtor's estate nor the funds available to the unsecured creditors. To hold otherwise would result in an unintended $150,000 windfall to Debtor's estate. Accordingly, Debtor received reasonably equivalent value in exchange for the security interest it granted to Frontier.

### III. Good Faith

11 U.S.C. § 548(c) provides that a transferee "that takes for value and in good faith has a lien on or may retain any interest transferred ... to the extent that such transferee or obligee gave value to the debtor in exchange for such transfer or obligation." The BAP concluded that Frontier did not satisfy 11 U.S.C. § 548(c) because (1) Frontier did not give value in exchange for the grant of the security interest and (2) Frontier did not act in good faith. Because the BAP erred in holding that Frontier did not give value in exchange for the grant of the security interest, we are left with only the question of whether Frontier acted in good faith.

As previously discussed, 11 U.S.C. § 548 seeks "to prevent the debtor from depleting the resources available to creditors through gratuitous transfers of the debtor's property." *Walker v. Treadwell (In re Treadwell),* 699 F.2d 1050, 1051 (11th Cir.1983). *Rubin* describes a typical scenario:

> When an overburdened debtor perceives that he will soon become insolvent, he will often engage in a flurry of transactions in which he transfers his remaining property, either outright or as a security, in exchange for consideration that is significantly less valuable than what he has transferred. Although such uneconomical transactions are sometimes merely final acts of recklessness, the calculating debtor may employ them as a means of preferring certain creditors or of placing his assets in friendly hands where he can reach them but his creditors cannot. Whatever the motivation, the fraudulent conveyance provisions ... recognize that such transactions may operate as a constructive fraud upon the debtor's innocent creditors, for they deplete the debtor's estate of valuable assets without bringing in property

of similar value from which creditors' claims might be satisfied.

661 F.2d at 988–89.

There is no evidence in the record that Frontier's receipt of the security interest was an attempt to defraud Debtor's creditors. Rather, the transactions were simply a means for Debtor to obtain a loan that it would otherwise not be able to receive. The transactions were not intended to, nor did they result in, any net loss to Debtor's estate. Therefore, Frontier acted in good faith in receiving the security interest.

### IV. Conclusion

For the foregoing reasons, the BAP erred in holding that Debtor did not receive reasonably equivalent value under 11 U.S.C. § 548(a)(1)(B) in exchange for the security interest it granted to Frontier and that Frontier was not protected under 11 U.S.C. § 548(c).

**REVERSED.**