
NOT FOR PUBLICATION

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: <br> LAURA A. VALENTE, <br>            Debtor. | BAP No. SC-22-1182-SGB <br><br> Bk. No. 19-01594-CL7 |
| LAURA A. VALENTE, <br>            Appellant, <br> v. <br> THOMAS NOWLAND, <br>            Appellee. | Adv. No. 19-90056-CL <br><br> **MEMORANDUM**[*] |

Appeal from the United States Bankruptcy Court
for the Southern District of California
Christopher B. Latham, Chief Bankruptcy Judge, Presiding

Before: SPRAKER, GAN, and BRAND, Bankruptcy Judges.

## INTRODUCTION

In a prior decision, this Panel vacated and remanded the bankruptcy court's judgment under 11 U.S.C. § 523(a)(2)(A)[1] that debtor Laura Valente was indebted to Thomas Nowland for "actual fraud." We remanded the

---

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532.

case for additional findings regarding the value of assets Valente caused to be fraudulently transferred from Valente Hair & Co., Inc. ("VHCI") to Valente Bella Industries, Inc. ("VBI"). On remand the parties and the bankruptcy court examined specific VHCI cash transfers made by Valente. The bankruptcy court concluded that Valente had VHCI fraudulently transfer the identified funds to various entities for VBI's benefit. The bankruptcy court held Valente individually liable for the fraudulent transfers and entered an amended judgment for Nowland in the amount of $33,775.83. Because her debt arose from a fraudulent transfer scheme, the court held that it was excepted from discharge under § 523(a)(2)(A).

Valente again appeals. Because she has not established that the bankruptcy court's amended judgment was based on any clearly erroneous factual findings or on any error of law, we AFFIRM.

## FACTS[2]

Most of the facts material to this appeal are found in our prior decision. *See Valente v. Nowland (In re Valente)*, BAP No. SC-21-1225-SFB, 2022 WL 2176785 (9th Cir. BAP June 16, 2022). In turn, they were largely derived from the bankruptcy court's original findings of fact rendered prior to remand. Valente did not challenge in her prior appeal the bankruptcy court's determination that she orchestrated a fraudulent

---

[2] We exercise our discretion to take judicial notice of documents electronically filed in the underlying bankruptcy case and adversary proceeding. *See Atwood v. Chase Manhattan Mortg. Co. (In re Atwood)*, 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

transfer scheme using VHCI and VBI. *See id.* at *6. Thus, to the extent she now attempts to challenge matters she failed to challenge in her prior appeal, she cannot. Those issues have been forfeited. *See de Jong v. JLE-04 Parker, L.L.C. (In re de Jong)*, 588 B.R. 879, 891 (9th Cir. BAP 2018), *aff'd*, 793 F. App'x 659 (9th Cir. 2020) (citing cases).

**A.    VHCI's formation, capitalization, and operations.**

Valente and Nowland began regularly seeing each other in 2014. At the time, Valente was a hairstylist in her early twenties. Nowland was a businessman and attorney in his fifties, as well as a licensed general contractor. Nowland provided Valente with a monthly allowance, a new car, payments for her personal rent, and occasional gifts and vacations.

In 2015, Valente told Nowland that she hoped to open a hair salon. Based on their discussions, Valente incorporated VHCI to operate the hair salon, and Nowland invested $25,000.00. In exchange, he received half of the ownership of VHCI. Valente owned the other half. They further agreed that Valente would serve as VHCI's chief executive officer, president, secretary, and manager. Nowland would serve as the company's chief financial officer.

VHCI rented a vacant shop on Girard Avenue in La Jolla, California ("Girard Salon"), renovated it, and opened the salon for business in February 2016. Both before and after the Girard Salon opened, Nowland made dozens of small infusions of capital to VHCI, usually ranging from $1,000.00 to several thousand dollars. Nowland treated the transactions as

3

loans and required Valente to sign promissory notes on behalf of VHCI.

By the end of June 2016, the personal relationship between Nowland and Valente had soured. Nowland stopped infusing capital into VHCI and began to sever his ties with VHCI. He formally resigned as VHCI's chief financial officer and had no ongoing role in the business by March 2017. By the time he resigned, VHCI had borrowed more than $200,000.00 from him.

## B.    VHCI's struggles and its ultimate demise.

VHCI continued to operate after Nowland stopped making loans to support the Girard Salon. Valente contributed no less than $68,111.50 to maintain VHCI's operations between February and November 2017. These funds came from another benefactor, Barton Siggson. Similar to Nowland, Valente took promissory notes from VHCI for virtually all of the funds she claimed to have invested in VHCI in both 2017 and 2018. The face amount of her notes from VHCI totaled over $210,000.00.

Valente's testimony during the trial demonstrated that VHCI relied on these loans to continue its operations. She testified that VHCI typically had a monthly operating loss of roughly $10,000.00, sometimes significantly more. The court found that VHCI struggled to pay its employees and its rent throughout its existence. On October 24, 2018, VHCI's landlord sued to evict VHCI from the Girard Avenue premises. Even before that, however, the landlord's attorneys were demanding payment of $103,000.00 in unpaid past due rent by letter dated October 11, 2018. According to Nowland, he discovered upon receipt of that letter that

4

VHCI had failed to pay any rent to its landlord in 2018. On November 30, 2018, Valente executed on behalf of VHCI a stipulated judgment for damages and agreed to turnover possession of the premises by December 16, 2018. This marked the end of VHCI's operations.

## C. VBI's formation, operations, and sale to a third party.

While the eviction proceedings were pending, Valente was working on opening a new salon on Prospect Street in La Jolla ("Prospect Salon"). The Prospect Salon was to be owned and operated by VBI. At least nominally, VBI was owned by Valente's father, John Valente. He incorporated VBI in December 2018, "very shortly after VHCI was evicted and closed its doors." However, Valente had begun working on securing a new salon location by no later than mid-October 2018. Emails between Valente and the landlord of the Prospect Salon show that Valente was negotiating a sublease for the premises and had submitted a lease application by that time. Valente's father and her boyfriend, Andrew Somo, signed the Assignment, Assumption, Modification and Consent Agreement for the sublease of the Prospect Salon on October 31, 2018. Valente signed a consent to the sublease and guaranteed the obligation on that same date.

Valente insists she never had any ownership interest in VBI. She claims she merely worked for her father by providing the Prospect Salon with secretarial, marketing, and management services. But she was involved in, or controlled, essentially every facet of the business. As noted above, she found and negotiated the lease for the Prospect Salon.

Additionally, Valente was instrumental in transferring assets and staff from the Girard Salon to the Prospect Salon. Valente later maintained that the Prospect Salon was "new" and had little or no connection to the Girard Salon, but VBI advertised the Prospect Salon as a "relocation" of the prior salon. Evidence at trial showed that VBI celebrated its commencement of operations with a "reopening party."

The exact date VBI opened for business is not clear from the record. Nowland claimed that it started its business on December 20, 2018, only four days after VHCI was required to turn over possession of the Girard Salon. The bankruptcy court, however, noted that VBI held its "reopening party" in early 2019. Valente did not operate VBI for long. VBI sold the Prospect Salon to a third party, Ediane Crawford, in July 2019 for $41,000.00. The sale included the salon's assets, an assignment of the salon's lease, and a three-year noncompete agreement.

## D. Valente files bankruptcy and Nowland sues for nondischargeability based on actual fraud.

Shortly after opening the Prospect Salon, but before VBI sold the business to Crawford, Valente filed her chapter 7 case. In June 2019, Nowland filed his adversary proceeding against Valente, her father, VBI, and others. By the time the court entered its pretrial order in February 2021, Nowland had abandoned or dismissed all claims against all defendants except his § 523(a)(2)(A) claim against Valente.

The bankruptcy court held eleven days of trial over the course of two

6

months and entered detailed findings of fact and conclusions of law. It found for Valente on all but one aspect of Nowland's § 523(a)(2)(A) claim for actual fraud. It held that she actively participated in, orchestrated, and coordinated the fraudulent transfer of VHCI's inventory, equipment, and other hard and intangible assets to VBI with the intent and purpose of defrauding Nowland and VHCI's other creditors.

However, the court rejected Nowland's arguments that Valente had fraudulently transferred $350,522.02 in cash, comprised of more than 1,500 transactions, to herself and other entities for her personal benefit. The court did not analyze any individual cash transfers. Instead, after considering the cash transfers as a whole, it concluded that Valente, and therefore VHCI, did not have the requisite intent to defraud VHCI's creditors in making the cash transfers. On the other hand, the bankruptcy court found the requisite culpable intent existed with respect to the noncash assets and determined that the value of the fraudulently transferred non-cash assets was equal to the $41,000.00 purchase price Crawford paid to VBI when she bought the Prospect Salon. The court entered a $41,000.00 judgment against Valente based on Nowland's § 523(a)(2)(A) claim. Valente appealed.

In June 2022, this Panel issued a memorandum decision vacating the judgment. The Panel affirmed the bankrupt court's uncontested findings as to Valente's participation in a scheme to fraudulently transfer VHCI's assets to VBI, and her personal liability for the transfers. The Panel remanded, however, for further findings as to the valuation of VHCI's non-

7

cash assets supporting the $41,000.00 judgment. *In re Valente*, 2022 WL 2176785, at *9. We additionally instructed that the bankruptcy court was free to consider on remand alternate means of measuring Nowland's damages resulting from Valente's fraudulent transfer scheme.

**E.     Bankruptcy court proceedings on remand.**

On remand, the bankruptcy court gave both parties the opportunity to concurrently brief three issues:

> (1) whether $41,000 accurately captures the value of [non-cash] assets transferred from [VHCI] to the Prospect Salon; (2) if so, whether the lease assignment, noncompete agreement, or any new improvements not funded with redirected VHCI capital to the [Prospect Salon] reduces that sum; and (3) if not, whether there is an alternative means supported by the record of valuing the assets transferred.

After the parties completed the additional briefing, the bankruptcy court rendered its findings, conclusions, and order after remand. Initially, the court reiterated its prior findings that VHCI transferred all of its tangible and intangible non-cash assets to VBI in December 2018. It also reaffirmed that Valente had knowingly and intentionally acted on behalf of both entities to effectuate these fraudulent transfers. The court additionally pointed to this Panel's prior remarks that Valente had not challenged these findings on appeal.

The court further noted that Nowland declined to defend or support on remand the prior valuation of the non-cash assets fraudulently transferred based on the sale of the Prospect Salon. Instead, Nowland

8

claimed that the alleged book value of the tangible and intangible assets could be used to value those assets. The bankruptcy court rejected book value as reliable evidence of the value of those assets at the time of transfer. Lacking any reliable evidence of the value of these fraudulently transferred assets, the bankruptcy court awarded nominal damages of $1.00 in recognition that VHCI had fraudulently transferred non-cash assets to VBI. Nowland has not appealed this determination, but Valente appeals the award of $1.00 for the fraudulent transfer of VHCI's non-cash assets to VBI.

At Nowland's urging the bankruptcy court revisited VHCI's cash transfers. It focused on a handful of transactions that occurred after he terminated his active involvement with the Girard Salon. The court remarked that its findings before remand viewed all of the cash transfers as a whole without reference to specific periods of time or payments. The court was persuaded by Nowland's post-remand brief that there was sufficient evidence to justify reconsideration of its findings as to $33,774.83 in specific cash transfers that occurred during the last quarter of 2018. The court explained that this period was significant as VHCI had already been sued by its landlord for eviction, and Valente had decided she needed to move her business out of the Girard Avenue premises. The court held that Valente used VHCI's funds to make the following fraudulent transfers to benefit VBI in her efforts to open the Prospect Salon:

| Date of Transfer | Amount of Transfer | From | To | Use |
|---|---|---|---|---|
| 11/6/2018 | $ 16,021.00 | VHCI | A-440 | VBI Rent |
| 12/6/2018 | $ 2,701.43 | VHCI | State College Dstrb. | Flooring |
| 11/13/2018-12/24/18 | $ 4,037.08 | VHCI | Various | Misc. Purchases |
| 10/9/1/-12/17/18 | $ 7,865.92 | VHCI | Valente, Inc | Net Transfers |
| 12/14/18-12/20/18 | $ 2,072.00 | VHCI | Home Depot | |
| 12/4/18-12/21/18 | $ 1,077.40 | VHCI | Amazon | |
| TOTAL | $ 33,774.83 | | | |

As to each of these transfers from VHCI, the bankruptcy court found virtually all of the badges of fraud were present. In turn, the court inferred that Valente made each transfer from VHCI with the intent to hinder or delay VHCI's creditors. The court similarly found that Valente engaged in "deceit, artifice, trick, or design involving direct and active operation of mind, used to cheat another" when she received the benefits of the cash transfers on behalf of herself and VBI.

The bankruptcy court also rejected Valente's affirmative defense based on Cal. Civ. Code § 3439.08(a), which provides that a transfer is not avoidable if it is taken in good faith and for reasonably equivalent value. In so holding, the court once again found that Valente was an "active participant in the fraud." As the court put it, she controlled both VHCI and VBI and acted as "instigator and puppeteer" in effecting the fraudulent transfer scheme. Given her involvement in this scheme, the court held that she failed to prove good faith. The bankruptcy court additionally rejected Valente's reasonably equivalent value allegations as unsupported by the record.

On August 25, 2022, the bankruptcy court entered its judgment after

remand determining that Valente was liable to Nowland for $33,775.85 resulting from her fraudulent transfer scheme ($33,774.85 in cash fraudulently transferred plus $1.00 in nominal damages for noncash transfers). This debt was declared nondischargeable under § 523(a)(2)(A). Valente timely appealed.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(I). We have jurisdiction under 28 U.S.C. § 158.

## ISSUES

1.  Did the bankruptcy court properly award nominal damages of $1.00 based on the value of all non-cash assets fraudulently transferred from VHCI to VBI?

2.  Did the bankruptcy court clearly err when it found that Valente made cash transfers from VHCI for VBI's benefit?

3.  Did the bankruptcy court clearly err when it found that the funds Valente deposited into VHCI did not negate the cash fraudulent transfers she orchestrated between VHCI and VBI?

4.  Were any of the bankruptcy court's intent findings clearly erroneous?

5.  Did Nowland have standing to seek nondischargeability under § 523(a)(2)(A) concerning Valente's liability for orchestrating the fraudulent transfer of assets between VHCI and VBI?

## STANDARDS OF REVIEW

Except for her standing issues, all of Valente's issues on appeal are

11

factual issues, which are subject to a clearly erroneous standard of review. "A court's factual determination is clearly erroneous if it is illogical, implausible, or without support in the record." *Retz v. Samson (In re Retz)*, 606 F.3d 1189, 1196 (9th Cir. 2010).

Standing issues are questions of law subject to de novo review. *All. United Ins. v. Krasnoff (In re Venegas)*, 623 B.R. 555, 560 (9th Cir. BAP 2020). When we consider a matter de novo, we give no deference to the bankruptcy court's decision. *Francis v. Wallace (In re Francis)*, 505 B.R. 914, 917 (9th Cir. BAP 2014).

## DISCUSSION

Typically, creditors of the transferor may recover against either the transferee of a fraudulent transfer, or the entity for whose benefit the transfer was made.[3] *In re Valente*, 2022 WL 2176785, at *4 (citing Cal. Civ. Code § 3439.08, and *Lo v. Lee*, 24 Cal. App. 5th 1065, 1072–73 (2018)). Valente is neither the transferee nor the entity benefitted by the transfers. Nonetheless, California law provides that an individual who perpetrates a fraudulent transfer scheme through an entity may be held individually liable for the resulting damages even though she is not the transferee or transfer beneficiary. *See, e.g., Sanger v. Ahn*, Case No. 18-cv-07204-JCS, 2019

---

[3] We previously addressed Valente's personal liability for VHCI's fraudulent transfers in *In re Valente*, 2022 WL 2176785, at *4-6, but we summarize our prior analysis here because the legal theory underlying Valente's liability is not a garden-variety fraudulent transfer claim.

12

WL 1229660, at * 7 (N.D. Cal. Mar. 15, 2019) (citing *Filip v. Bucurenciu*, 129 Cal. App. 4th 825, 837 (2005), and holding that an active participant who conspires to commit a fraudulent transfer may be held liable even if not the transferee or beneficiary of the transfer).[4]

The bankruptcy court originally found that VHCI, acting through Valente, had fraudulently transferred tangible and intangible assets, other than money, to VBI and valued the transfers based on a subsequent sale of the business to a third party. In our prior decision, we noted that "Valente has not challenged the court's determination that both VHCI and VBI, acting through Valente, fraudulently transferred assets from VHCI to VBI, or her active and knowing participation in those fraudulent transfers." *In re Valente*, 2022 WL 2176785, at *6. Valente's active and knowing participation in the scheme on behalf of both companies established her debt and that her liability arose from actual fraud for purposes of excepting it from discharge under § 523(a)(2)(A). *Husky Int'l Elecs., Inc. v. Ritz*, 578 U.S. 356, 365 (2016); *Bonnett v. Moirbia Scottsdale, LLC (In re Bonnett)*, BAP No. AZ-19-1293-BTL, 2020 WL 4371881, at *4 (9th Cir. BAP July 30, 2020), *aff'd sub nom.*

---

[4] Under California agency law, a plaintiff sufficiently pleads fraud against a defendant agent by alleging that the agent "had knowledge of, and participated in" the principal's fraud scheme. *PowerPC Comercio De Equipamentos De Informatica LTDA v. Sky Glob. Servs. Inc.*, Case No. 8:18-CV-614-JLS-JDE, 2018 WL 6521497, at *3 (C.D. Cal. Aug. 8, 2018); *see also Aleo Solar Deutschland GmbH v. Innovative Mech. & Elec., Inc.*, Case No. 2:12-CV-2629-ODW SPX, 2012 WL 3709632, at *3 (C.D. Cal. Aug. 28, 2012) ("an agent who knowingly participates in a fraudulent transaction is responsible for his or her own misconduct." (citing *Jacobs v. Freeman*, 104 Cal. App. 3d 177, 193 (1980))).

*Bonnett v. Moirbia Scottsdale, LLC*, 860 F. App'x 473 (9th Cir. 2021). As stated in *Bonnett,* a fraudulent transfer debt falls within § 523(a)(2)(A) when:

> 1) the transferor conveyed the property with the intent to hinder or delay his creditors; and 2) the transferee was a participant in the fraud, such that it could be said that the debtor engaged in "deceit, artifice, trick, or design involving direct and active operation of the mind, used to circumvent and cheat another."

*In re Bonnett*, at *4–5 (quoting *Fisher v. Quay (In re Quay)*, Adv. No. 04-6065, 2005 WL 6488242, at *9 (Bankr. N.D. Ga. Mar. 29, 2005)).

Based on the post-remand briefing, the bankruptcy court held that Nowland had not adequately proven the value of the non-cash assets fraudulently transferred by VHCI to VBI but awarded Nowland $1.00 against Valente in recognition that she had fraudulently transferred those assets to VBI. Valente appeals the court's valuation on remand of the non-cash assets at $1. As to these assets, the only viable issue in this appeal is the valuation issue because Valente did not challenge in her prior appeal the court's determination that VHCI had fraudulently transferred them or that she had fraudulently orchestrated those transfers. *See In re de Jong*, 588 B.R. at 891.

The bankruptcy court did make new findings on remand as to several cash transfers from VHCI between October and December 2018, to various entities. The court held that VHCI made specific transfers of funds for the benefit of VBI while closing VHCI, or afterwards. As detailed above, the transfers were grouped into categories: $16,021.00 for VBI's first month's

rent and security deposit for the Prospect Street premises, $2,701.43 to purchase flooring for the Prospect Salon, $7,865.92 in net transfers made for hair products and related inventory from Valente, Inc. (a separate Valente company), $4,037.08 to purchase additional inventory from other companies, $2,072.00 for tools and hardware needed from Home Depot, and $1,077.40 to purchase additional items from Amazon.com. The court found that VHCI, acting through Valente, intended to defraud VHCI's creditors when it made each of the challenged cash transfers. As to each of these transfers, it was undisputed that the cash withdrawn from VHCI was used to procure items "for the salon." Except for the rent, security deposit, and flooring, however, Valente asserted that the items were for the Girard Salon and not the Prospect Salon. The bankruptcy court found to the contrary. As in its original decision, the court found that Valente's knowing participation in making the transfers, and in VBI's receipt of the benefit of the transfers, established her culpability for purposes of excepting her liability from discharge under § 523(a)(2)(A).

Valente does not deny that she withdrew the funds from VHCI's bank account to make these purchases or the nature of the purchases. She does, however, contend that there is no evidence to support a finding that VHCI made the cash transfers for VBI's benefit.[5] She argues, therefore, that

---

[5] Unlike the court's decision as to the non-cash assets, the bankruptcy court did not make individualized findings as to specific cash transfers prior to remand. Because Valente had no opportunity to address the court's post-remand findings as to the cash transfers in her prior appeal, she properly raises them in this appeal.

there are no underlying fraudulent transfers for which she is liable. She also contends that in light of the monies she and others deposited into VHCI the court erred when it found that VHCI's subsequent transfers were made with the actual intent to defraud its creditors. Finally, she repeats arguments we rejected in the first appeal that Nowland lacked standing to sue her for damages arising from her involvement in VHCI's fraudulent transfers.

Before we address these arguments, we first address Valente's argument that the bankruptcy court erred in awarding Nowland $1.00 in damages for the transfer of VHCI's non-cash assets as it raises a much narrower question than the claims based on the cash transfers.

## A. The bankruptcy court properly awarded Nowland $1.00 for the fraudulent transfer of VHCI's non-cash assets.

Valente contests the bankruptcy court's award after remand of $1.00 for the fraudulent transfer of the non-cash assets. This argument is woven into her broader argument that Nowland failed to prove that VHCI made any transfer for VBI's benefit. But the bankruptcy court originally held that Valente was individually liable for VHCI's transfer of its non-cash assets to VBI including "salon chairs, mirrors, cabinets, computers, desks, products to be used in the shop and sold to customers, customer lists, marketing materials and products, different types of software, and a variety of intellectual property." The court also found that these assets were transferred directly to VBI and used as part of the Prospect Salon. The court

originally found, and reaffirmed after remand, that VBI was the transferee of the fraudulent transfer that Valente engineered on both ends. The record supports these findings. Furthermore, Valente's first appeal did not challenge her liability for these transfers to VBI—only the valuation of the assets transferred. It is too late for her to do so now after remand. *See In re de Jong*, 588 B.R. at 891.

Valente also baldly states that "the $1.00 in 'nominal damages' should not be allowed." Having determined that Valente caused VHCI to fraudulently transfer its non-cash assets to VBI, the award of nominal damages was appropriate despite Nowland's inability to prove any specific value.

## B.   VHCI's fraudulent cash transfers were for VBI's benefit.

Turning to the cash transfers the bankruptcy court found to be fraudulent transfers on remand, Valente first argues that the bankruptcy court clearly erred because Nowland failed to "trace" the benefit of the items purchased with VHCI's funds to either Valente or VBI. Absent a transfer to VBI, or proof that it benefitted from the transfer, Valente contends that Nowland failed to prove a fraudulent transfer for which she may be held liable.

As we previously stated, liability arises under California fraudulent transfer law when a voidable transfer is made to a transferee or to a "transfer beneficiary." *In re Valente*, 2022 WL 2176785, at *4 (citing Cal. Civ. Code § 3439.08 and *Lo*, 24 Cal. App. 5th at 1072–73). For purposes of

17

imposing liability for a fraudulent transfer, "[t]ransfer beneficiary status depends on three aspects of the 'benefit': (1) [the benefit (as opposed to the assets themselves)] must actually have been received by the beneficiary; (2) it must be quantifiable; and (3) it must be accessible to the beneficiary." *Lo*, 24 Cal. App. 5th at 1073-74 & n.4 (cleaned up) (citing *Baldi v. Lynch (In re McCook Metals, L.L.C.)*, 319 B.R. 570, 590–94 (Bankr. N.D. Ill. 2005)).

VBI was not a direct transferee of the challenged cash transfers. Rather, Nowland argued that they were made for VBI's benefit in setting up VBI's new salon while VHCI was closing. Valente maintains that VBI was not a transfer beneficiary. She contends that Nowland failed to prove that any of the miscellaneous purchases from Valente Inc., Home Depot, Amazon, and others for supplies, inventory, and equipment were actually transferred to VBI. Though she concedes that the inventory, supplies, tools, equipment, and other items were purchased "for the salon" during the last quarter of 2018, she argues that they were purchased for VHCI's Girard Salon, and there was nothing fraudulent in maintaining its business operations. Valente contends that the transfers made between October and December 2018 did not materially differ from the year before. But VHCI was not closing its business in late 2017. For most of that time she was still getting funds from Siggson to lend to VHCI.

Valente's argument presupposes that VHCI remained a viable, ongoing business in late 2018. As explained by the bankruptcy court, the challenged cash transfers were "limited to payments made in VHCI's final

months that were not consented to, did not go to legitimate or fringe VHCI purposes, and were not used for Defendant's personal support." The transfers were made in VHCI's last quarter of existence, between October 9, 2018 and December 31, 2018, though overwhelmingly the specific transfers occurred in November and December including many dates near or after VHCI's stipulated date to turn over the Girard Salon.

Nowland argued, and the court found, that these transfers "were clearly for VBI purposes." The rent payment VHCI made for VBI on November 6, 2018, and the payment on December 6, 2018, for VBI's flooring, were clearly made for VBI's benefit and established that VHCI was using its funds to benefit VBI during this time. The payments for inventory and equipment are not as obvious. But the court reviewed the amounts and the timing of the transfers and found that Valente used VHCI's funds to make specific purchases to help open VBI for business during the last three months of 2018.

Valente maintains that the bankruptcy court should not have discredited her testimony that VHCI needed these items for the busy holiday season. But based on the timing, frequency, and amounts of the transfers, the bankruptcy court held that VHCI had no legitimate need for these items and that Valente purchased them for VBI's benefit. Throughout this period VHCI could not pay its operating expenses and owed its landlord roughly $100,000.00 in back rent. The landlord had sued for eviction. Valente was working to procure and remodel the Prospect Salon

as VBI's business premises. Valente's father signed the sublease for VBI on October 31, 2018. At the same time, Valente consented to the sublease and guaranteed VBI's lease obligations. Valente, on behalf of VHCI, then signed a Stipulated Judgment with its landlord on November 30, 2018. That judgment acknowledged the landlord's right to a writ of possession, but the landlord agreed that VHCI would not be locked out until December 16, 2018. In short, this chronology demonstrates that as of October 2018, VHCI should have been in the process of winding down its business while facing imminent closure. Valente's actions demonstrate that VHCI was not moving to the Prospect Street location to continue its business. Rather, she was starting a new company, using a new entity. Moreover, there was no legitimate business purpose for VHCI to be purchasing inventory, supplies, and equipment for future business in light of its debts, its inability to pay operating expenses, and its imminent eviction. The timing of events ultimately leading to VHCI's closing amply supports the bankruptcy court's conclusion that VHCI's challenged cash transfers, made by Valente, were for VBI's benefit.[6]

---

[6] The only other evidence Valente points to is a chart showing amounts withdrawn from VHCI's bank account for hardware store purchases throughout 2017 and 2018. Valente says that the amounts in the chart demonstrate the routine nature of the roughly $2,000 in Home Depot purchases Valente paid from VHCI's account in December 2018. We disagree. The chart shows that VHCI's December 2018 Home Depot expenditures were roughly 10 times more than the sum of VHCI's hardware store purchases during the preceding two-year period. If anything, this chart supports the bankruptcy court's inference.

The bankruptcy court was not required to accept Valente's explanation. "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson v. City of Bessemer City*, 470 U.S. 564, 574 (1985). The circumstantial evidence that the purchases were for the benefit of the business that was starting rather than the one that was closing strongly supports the court's finding that Valente used VHCI's funds to purchase items for VBI's benefit. Its finding that the challenged transfers were for the benefit of VBI was not clearly erroneous.

## C.  Valente used VHCI's assets to pay VBI's rent, security deposit, and flooring.

Valente separately challenges her liability for VHCI's payment of VBI's first month's rent, security deposit, and flooring based on the bankruptcy court's finding that VHCI fraudulently transferred those funds for VBI's benefit. She does not seriously dispute that these payments were made for VBI's benefit. Nor does she argue that VHCI somehow benefitted from making these payments. Rather, she contends that they were not made from VHCI's property and therefore cannot constitute fraudulent transfers for which she may be held liable. She maintains that she (through Valente, Inc.), her boyfriend Andrew Somo, and her friend Jim Nickel deposited roughly $23,000.00 into VHCI's checking account to pay for the rent, security deposit, and flooring.

By way of explanation, Valente contends that VBI's landlord required

21

that the rent and security deposit be paid by cashier's check. She maintains that her father was unable to accomplish this, so she transferred money from Valente, Inc. into VHCI to assist her father. VHCI's bank records show that on November 1, 2018, Valente, Inc. deposited $12,387.78 into VHCI's account, and there was a separate deposit of $2,000.00, which Valente says was from Nickel. VHCI's bank records also show another $2,000.00 deposited on November 6, 2018, which Valente says came from Somo. That same day, November 6, 2018, Valente withdrew $16,021.00 from VHCI's bank account and obtained a cashier's check payable to A-440 Enterprises, Inc., VBI's landlord, to pay VBI's first month of rent and its security deposit.

The bankruptcy court noted that Nickel and Somo required VHCI to execute promissory notes for their deposits. This establishes that VHCI borrowed the funds. As such, the funds were VHCI's property. The resulting debt also was VHCI's. Those funds were placed into VHCI's bank account. This was the same account Valente used to pay VBI's rent and security deposit. As the bankruptcy court properly noted, VHCI received reasonably equivalent value for the debt it created. *Stone v. Morton Cmty. Bank (In re Int'l Supply Co.)*, 631 B.R. 331, 343-44 (Bankr. C.D. Ill. 2021). But VHCI received nothing for paying VBI's obligations.

The bankruptcy court similarly rejected Valente's contention that Valente, Inc.'s November 1, 2018 deposit of $12,387.78 into VHCI did not become property of VHCI. The bankruptcy court found that on October 29,

2018, VHCI had transferred out $13,000.00 to Valente, Inc. The court concluded that Valente, Inc.'s deposit into VHCI three days later was in substantial repayment of VHCI's prior $13,000.00 transfer. On appeal, Valente does not address the bankruptcy court's finding. Rather, she reiterates that Valente, Inc. deposited $12,387.78 into VHCI 's account to fund VBI's rent and security deposit. Simply rearguing on appeal one of two inferences the court permissibly could have drawn from the facts presented at trial does not establish that the bankruptcy court clearly erred. *Anderson*, 470 U.S. at 574.

Even under Valente's version of events, it remains unclear why Valente, Inc. did not simply pay VBI's rent and security deposit directly rather than deposit funds into VHCI's account for that purpose. More importantly, there is no contemporaneous evidence that VHCI accepted any deposit for a limited purpose. Indeed, the promissory notes issued to Nickel and Somo demonstrate that VHCI was borrowing money. It had no reason to borrow money for VBI's benefit. Nor did it have any reason to accept a deposit from Valente, Inc. for VBI's benefit. Rather, VHCI was a separate entity with its separate obligations to its creditors, including its landlord, Nowland, Nickel, and Somo.

Valente, Inc. voluntarily deposited its funds into VHCI's bank account without limitation. Once it did so those funds became VHCI's unrestricted assets. *See Parker v. First Cmty. Bank (In re Bakersfield Westar Ambulance, Inc.)*, 123 F.3d 1243, 1246 (9th Cir. 1997) (citing Cal. cases) (upon

23

deposit title to the deposited funds passed to the bank, and account owner became a creditor of the bank with a contract claim for the amount of the funds deposited.) This had consequences. VHCI's assets, including the funds held in its bank account, were liable for VHCI's debts. Given its apparent insolvency at the time, VHCI owed a fiduciary duty to its creditors. *See generally Berg & Berg Enters. v. Boyle,* 178 Cal. App. 4th 1020, 1041 (2009) (explaining that upon insolvency corporate insiders owe a fiduciary duty under California law to the corporation's creditors not to divert, dissipate, or unduly risk "corporate assets that might otherwise have been used to satisfy creditors' claims."). The record amply demonstrates that the $16,021.00 paid for VBI's rent and security deposit was property of VHCI, that VHCI received nothing for the transfer, and that it constituted a fraudulent transfer from the perspective of VHCI's creditors.

Finally, the analysis supporting the bankruptcy court's finding that VHCI, acting through Valente, fraudulently transferred $2,701.43 to pay for VBI's flooring is virtually identical to that set forth above regarding VBI's first month's rent and security deposit. Valente claims on appeal that funds to pay for VBI's flooring were deposited into VHCI's bank account but originally came from Valente, Inc., Nickel, and Somo in the same manner she alleged the funds for VBI's rent and security deposit came to VHCI. We reject this argument for the exact same reasons we rejected her argument with respect to the rent and the security deposit.

**D.     VHCI, acting through Valente, made the cash transfers with the actual intent to defraud its creditors.**

Valente further contends that the bankruptcy court's findings of fraudulent intent for the fraudulent transfers that serve as the predicate for her liability are clearly erroneous. Under California law, a transfer is avoidable as fraudulent under Cal. Civ. Code § 3439.04(a)(1) if the debtor made the transfer with the actual intent to hinder, delay, or defraud any creditor. Whether the conveyance was made with the requisite culpable intent is a question of fact that typically must be inferred from the surrounding circumstances. *Filip*, 129 Cal. App. 4th at 834 (citing *Annod Corp. v. Hamilton & Samuels,* 100 Cal. App. 4th 1286, 1294 (2002)). Cal. Civ. Code § 3439.04(b) sets forth well-known "badges of fraud" that can assist the trier of fact in determining whether the transfer was made with the required intent, which include:

(1)     Whether the transfer or obligation was to an insider.
(2)     Whether the debtor retained possession or control of the property transferred after the transfer.
(3)     Whether the transfer or obligation was disclosed or concealed.
(4)     Whether before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit.
(5)     Whether the transfer was of substantially all the debtor's assets.
(6)     Whether the debtor absconded.
(7)     Whether the debtor removed or concealed assets.
(8)     Whether the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred.
(9)     Whether the debtor was insolvent or became insolvent shortly

after the transfer was made or the obligation was incurred.

(10) Whether the transfer occurred shortly before or shortly after a substantial debt was incurred.

(11) Whether the debtor transferred the essential assets of the business to a lienor that transferred the assets to an insider of the debtor.

However, as *Filip* cautioned:

> these factors do not create a mathematical formula to establish actual intent. There is no minimum number of factors that must be present before the scales tip in favor of finding of actual intent to defraud. This list of factors is meant to provide guidance to the trial court, not compel a finding one way or the other.

*Filip*, 129 Cal. App. 4th at 834.

The court considered the badges of fraud and applied them to each set of cash transfers. It found that substantially all the badges were present in each instance.

In her opening brief, Valente recites the badges of fraud and states that none apply. This is simply not the case. Again, Valente's mere disagreement with the court's findings does not constitute reversible error. The bankruptcy court properly found that VHCI made the challenged transfers to benefit VBI, an insider of VHCI, by virtue of her control of both entities. There was no legitimate reason for VHCI to use its assets to fund VBI's opening. VHCI never disclosed that it was paying VBI's expenses. During these transfers, VHCI was being sued by its landlord for substantial nonpayment of rent and was facing immediate eviction from its sole place of business and a judgment of roughly $170,000.00. The unrefuted evidence

26

shows that VHCI could not pay its rent or employees and depended on regular "business loans" from Nowland, Siggson, and others that it did not and could not repay. In short, VHCI was insolvent and facing entry of a judgment and immediate eviction from its sole place of business. The challenged transfers served no business purpose for VHCI, and the bankruptcy court duly found that it received no value for making any of the challenged transfers. The record is replete with evidence of VHCI's fraudulent intent for the transfers identified by the bankruptcy court.

In attacking the court's badges of fraud findings, Valente focuses almost exclusively on reasonably equivalent value.[7] As she stated in her reply brief on appeal: "The Appellant is rightly perplexed as to how she is unjustly facing $33,875.83 in fraudulent transfer charges, when it is unrefuted that she has personally injected $99,282.58 in value into VHCI." The $99,282.58 Valente references is comprised of: $68,111.50 in monies she received from Barton Siggson between February and November of 2017; $27,171.08 in funds from Valente Inc. transferred between March and December of 2018; and $4,000.00 from the November 1, 2018 deposit of

---

[7] Reasonably equivalent value also is material to a transferee's defense to a fraudulent transfer under Cal. Civ. Code § 3439.08(a). As stated in the statute, "a transfer or obligation is not voidable . . . against a person that took in good faith and for reasonably equivalent value given to the debtor . . . ." Valente had the burden of proof to establish that VBI acted in good faith and gave VHCI reasonably equivalent value. *See* Cal. Civ. Code § 3439.08(f). The bankruptcy court did not err in holding that Valente's active and knowing orchestration of the fraudulent transfer scheme between VHCI and VBI vitiated any claim of good faith and precluded this affirmative defense.

$2,000.00 from Nickel, and the November 6, 2018 deposit of $2,000.00 from Somo previously discussed. According to Valente, these contributions prove that VHCI did not intend to defraud its creditors when it made the challenged cash transfers.

Where a transfer is challenged as being made with the actual intent to hinder, delay, or defraud, reasonably equivalent value is not a per se defense. Rather, value is only one of the applicable badges of fraud the court was entitled to consider. *Filip*, 129 Cal. App. 4th at 834; *Betancourt v. Ballmer (In re Betancourt)*, BAP No. CC-17-1016-KuLTa, 2017 WL 3482035, at *6 (9th Cir. BAP Aug. 14, 2017), *aff'd,* 756 F. App'x 741 (9th Cir. 2019) ("the presence or absence of reasonably equivalent value is just one of several factors courts typically consider when assessing whether the debtor had the requisite state of mind to commit an actual fraudulent transfer."). Even if these deposits were given in exchange for some or all the transfers, the bankruptcy court's finding that the transfers were fraudulent was not clearly erroneous on this record based on the existence of multiple other badges of fraud. However, the timing and circumstances of the deposits demonstrate that they were not made in exchange for the challenged transfers.

Cal. Civ. Code § 3439.03 defines value for fraudulent transfer purposes as "given for a transfer or an obligation if, **in exchange for the transfer or obligation**, property is transferred or an antecedent debt is secured or satisfied, but value does not include an unperformed promise

made otherwise than in the ordinary course of the promisor's business to furnish support to the debtor or another person." (Emphasis added.) As the bankruptcy court correctly observed, "the requirement that the debtor must have 'received' the value in question expresses a temporal condition demanding an element of contemporaneity in the determination of whether something close to the reasonable equivalence has been exchanged." *Greenspan v. Orrick, Herrington & Sutcliffe LLP (In re Brobeck, Phleger & Harrison LLP)*, 408 B.R. 318, 342 (Bankr. N.D. Cal. 2009) (quoting *Jackson v. Mishkin* (*In re Adler Coleman Clearing Corp.*), 263 B.R. 406, 466–67 (S.D.N.Y. 2001)). Thus, to support a transfer the value received by the transferor must be "bargained for at the date of the original transaction." *In re Brobeck, Phleger & Harrison LLP*, 408 B.R. at 342 (citing 5 *Collier on Bankruptcy*, ¶ 548.05[1][b] at 548-38 (15th ed. rev. 2002)). It is not necessary that the value exchanged come from the transferee so long as it is "sufficiently concrete and identifiable." *Id*. at 341 (citing *Frontier Bank v. Brown (In re N. Merch., Inc.*), 371 F.3d 1056, 1058 (9th Cir. 2004)). Significantly, "[b]ecause the policy behind fraudulent transfer law is to preserve assets of the estate, reasonably equivalent value is determined from the standpoint of creditors; it is not determined from the defendant's perspective." *Id.* (quoting *Brandt v. nVidia Corp.* (*In re 3dfx Interactive, Inc.*), 389 B.R. 842, 863 (Bankr. N.D. Cal. 2008)). Courts measure value at the time

29

of the transfer. *Id.* (citing *BFP v. RTC*, 511 U.S. 531, 546 (1994)).[8]

The bankruptcy court acknowledged that VHCI received deposits from various sources including the deposits identified by Valente. But the monies deposited into VHCI had little to do with VHCI's transfers shortly before it closed and VBI opened its doors. There is no credible evidence that these deposits were made in exchange for any of VHCI's challenged transfers. Indeed, most of the deposits substantially pre-date the subject transfers. Deposits into VHCI predating the challenged transfers could not be made in exchange for its subsequent transfers.[9]

Moreover, it is undisputed that the monies from Siggson, Nickel, and Somo were loans to VHCI. As the bankruptcy court noted, the lenders and VHCI exchanged mutual value in the form of money lent to VHCI by the lenders and the promissory notes from VHCI. This is the holding of cases cited by Valente, such as *In re International Supply Co.*, 631 B.R. at 343-44, which recognized that debt incurred in exchange for monies lent constitutes equivalent value. This simply means that the loans evidenced

---

[8] California courts have long applied substantially the same standards. *See Hansen v. Cramer*, 39 Cal. 2d 321, 324 (1952). Indeed, the latest version of Cal. Civ. Code § 3439.03 defining what constitutes value for fraudulent transfer purposes is derived from § 548(d)(2)(A) of the Bankruptcy Code. California courts typically look to bankruptcy court decisions for guidance when the California fraudulent transfer provision has its genesis in bankruptcy law. *See Lo*, 24 Cal. App. 5th at 1072-73.

[9] Siggson deposited $68,111.50 into VHCI's bank account a year or more before the first challenged transfer. Valente's own accounting shows that $3,358.00 of Valente, Inc.'s deposits were made in small amounts months prior to the first challenged cash transfer.

by the promissory notes given to Siggson, Nickels and Somo were for reasonable value. That is not the issue. The question is whether value was received in exchange for the challenged transfers. Though the satisfaction of antecedent debt may constitute value under Cal. Civ. Code § 3439.03, Valente does not argue, and there is no evidence, that any of the challenged transfers satisfied VHCI's obligations under the notes given to its lenders. Rather, VHCI used its funds to benefit a third-party insider, VBI. VHCI received no benefit from these transactions. Accordingly, the finding that VHCI did not receive value for the identified cash transfers is not clearly erroneous.

Finally, Valente argues that since her associates lent or deposited more monies in total than she used from VHCI to assist VBI's new business there was no harm to VHCI to support any fraudulent transfer claims. This is simply a recast of her prior argument regarding reasonably equivalent value. Valente has not shown that the prior deposits had any relationship to the specific challenged transfers. As noted above, the monies deposited by Nowland, Siggson, and Valente herself, were documented as loans to VHCI, that it could not pay and further evidenced VHCI's insolvency. VHCI's payment of VBI's start-up costs provided no benefit to VHCI and deprived it of the limited assets it had to repay its debts, including the loans owed to Nowland and VHCI's other creditors.

We find no error in the bankruptcy court's consideration and application of the badges of fraud or its conclusion that VHCI, acting

31

through Valente, had the actual intent to defraud its creditors. Nor was there any error in the bankruptcy court's determination under *Bonnett* that Valente actively and knowingly participated in the fraudulent transfers on behalf of both VHCI and VBI.

**E.      Valente has not established any error in the court's determination that Valente transferred $7,865.92 in net funds out of VHCI to Valente, Inc. with fraudulent intent.**

Valente's reasonably equivalent value arguments extend equally to VHCI's transfers to Valente, Inc. Unlike the other challenged transfers, the bankruptcy court netted the transactions between Valente, Inc. and VHCI. The court found that VHCI transferred $30,669.00 to Valente, Inc. between October and December 2018. The court subtracted $22,813.08 in deposits from Valente, Inc. into VHCI's bank account during the same period to calculate the fraudulent transfers based on the "net" loss to VHCI of $7,865.92 ($30,669.00 - $22,813.08 = $7,865.92).[10]

The bankruptcy court reasoned that VHCI had historically purchased products and inventory from Valente, Inc. for its hair salon business. It accepted that VHCI had historically made certain valid purchases from Valente, Inc. in furtherance of its business "because [Valente] produced invoices demonstrating purchases and because those were logical—both in time and amount—under her narrative." However, the court questioned

---

[10] Nowland proposed this calculation, though using slightly different amounts, in his supplemental briefing after remand.

why VHCI would transfer funds to Valente, Inc. after October 10, 2018, to purchase products and inventory from Valente, Inc. for its own use given VHCI's impending closure. The court noted that Valente was unable to produce invoices for these transactions, unlike those that occurred earlier in 2018. Additionally, the court observed that in its last three months of 2018, VHCI's transfers to Valente, Inc. differed from those supported by invoices. The court explained that the later transfers were "inconsistent temporally and numerically with her pattern of small purchases."

Finally, the court found it implausible that VHCI purchased over $30,000.00 in product when it knew it would be evicted from the Girard Salon especially when Valente was already negotiating the Prospect Street lease for VBI. Accordingly, the court agreed with Nowland that VHCI's $7,865.92 in **net** transfers to Valente, Inc. in and after October 2018 served no business purpose and thus were for the purchase of products for the benefit of VBI.

We find no clear error in these factual findings. Importantly, the bankruptcy court did not find fraudulent the entire $30,669.00 in gross transfers from VHCI to Valente, Inc.[11] Instead, the bankruptcy court **credited** Valente for all of Valente, Inc.'s deposits into VHCI during the last quarter of 2018.

---

[11] This included the $13,000.00 transfer from VHCI to Valente on October 29, 2018, as the bankruptcy court otherwise held that Valente had paid $12,387.78 to VHCI on November 1, 2018, as substantial payment for the $13,000.00 it received from VHCI.

Nowland does not challenge the netting of these amounts on appeal. But Valente would have us double count the $22,813.08 in Valente Inc. deposits. These same deposits are a significant part of the funds Valente claims she gave as reasonably equivalent value for the challenged cash transfers overall. Valente cannot have it both ways. She cannot first accept the court's crediting of these deposits to reduce the $30,669.00 in gross transfers from VHCI to Valente, Inc. to reach a net cash transfer amount of $7,865.92 and then count the same deposits a second time as so-called reasonably equivalent value given in exchange for the challenged cash transfers in total.

## F.     Valente's standing arguments have no merit.

Finally, Valente attempts to re-argue the same standing arguments she raised in her prior appeal. She mischaracterizes Nowland's § 523(a)(2)(A) claim against her as a fraudulent transfer or avoidance claim belonging to VHCI. She further claims that Nowland unsuccessfully tried to sue her as VHCI's alter ego. According to Valente, she is not individually indebted to Nowland; only VHCI is.

As we explained in our prior decision—and reiterated above— Valente may be held personally liable for her tortious conduct in orchestrating the fraudulent transfer scheme between VHCI and VBI. *In re Valente*, 2022 WL 2176785, at *7 (citing *Sanger*, 2019 WL 1229660, at *7). Consequently, Nowland is not asserting against Valente any rights he holds against VHCI or that qualify as an asset belonging to VHCI.

34

Valente's liability to Nowland is related to but independent of Nowland's claim against VHCI for the amounts VHCI owes him.

We made these same determinations in our prior decision before remand. *See id.* Those determinations are law of the case. *See Blixseth v. Credit Suisse*, 961 F.3d 1074, 1081 (9th Cir. 2020) (citing *Herrington v. Cnty. of Sonoma*, 12 F.3d 901, 904–05 (9th Cir. 1993)). Though the Ninth Circuit recognizes some exceptions to the law of the case doctrine, none of those exceptions are applicable here. *See Gonzalez v. Arizona*, 677 F.3d 383, 389 n.4 (9th Cir. 2012) (en banc), *aff'd sub nom. Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1 (2013).[12]

## CONCLUSION

For the reasons set forth above, we AFFIRM.

---

[12] As stated in *Gonzalez*, the exceptions to the law of the case doctrine are: "(1) the [prior] decision is clearly erroneous and its enforcement would work a manifest injustice, (2) intervening controlling authority makes reconsideration appropriate, or (3) substantially different evidence was adduced at a subsequent trial." *Id.* (quoting *Jeffries v. Wood*, 114 F.3d 1484, 1489 (9th Cir. 1997) (en banc)).